## 338 CARTONS, MORE OR LESS, OF BUTTER et al. v. UNITED STATES.

### No. 5629.

Circuit Court of Appeals, Fourth Circuit.

Dec. 24, 1947.

W. G. Stathers, of Clarksburg, W. Va. (George Richardson, Jr., of Bluefield, W. Va., on the brief), for appellant.

Vincent A. Kleinfeld, Atty., Dept. of Justice, of Washington, D. C. (T. Vincent Quinn, Asst. Atty. Gen., and Leslie E. Given, U. S. Atty., of Charleston, W. Va., on the brief), for appellee.

Before SOPER and DOBIE, Circuit Judges, and CHESNUT, District Judge.

DOBIE, Circuit Judge.

This appeal is the result of three libel proceedings instituted by the United States (hereinafter called the Government) under the provisions of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C.A. § 334(a), (hereinafter called the Act) in which the Government sought the seizure and condemnation of three lots of butter owned by the Bowser Sales & Trading Corporation of Sisterville, West Virginia, (hereinafter called the claimant) and shipped in interstate commerce. The proceedings were consolidated and tried before a jury in the District Court of the United States for the Southern District of West Virginia. The jury returned a verdict in favor of the Government on virtually all issues, and the District Court, finding the butter to be adulterated within the meaning, and in violation of, the Act, 21 U.S.C.A. § 342(a)(3), ordered it condemned and forfeited to the United States. The claimant thereupon moved the court "to deliver the condemned article to it, pursuant to Section

·334(d), Title 21 U.S.C.A. for the purpose of salvaging or manufacturing same into butter oil so the same will be made to conform to and with the provisions of the Federal Food, Drug, and Cosmetic Act." After hearings were had and evidence taken upon this motion, the lower court overruled it, and this appeal is taken from that denial of the motion.

■ At the outset, the Government in its brief contends that the order from which the claimant appeals is not a final decision within the meaning of 28 U.S.C.A. § 225 and hence is not reviewable by this Court. This point was not strongly urged upon us in oral argument. We think that the judgment of the District Court is final and appealable. Its decree directed the condemnation and forfeiture of the butter, denied the claimant's request to reprocess the butter in order to make it fit for human consumption, but granted the claimant's motion that the product be released to it for manufacture into soap stock. Certainly this order terminates the litigation between the parties on the merits of the case and fully determines the rights and liabilities of the claimant and the Government with respect to the property in controversy. Nothing remains to be done except to perform certain ministerial tasks prescribed by the court order.

■ It is to be emphasized that this appeal is not from the decree of condemnation but only from that part of the judgment which denied the claimant permission to salvage the butter by converting it into butter oil fit for human consumption. The pertinent part of the Seizure Section of the Act, 21 U.S.C.A. 334(d), provides: "Any food * * * condemned under this section shall, after entry of the decree, be disposed of by destruction or sale as the court may, in accordance with the provisions of this section, direct * *. *: Provided, That after entry of the decree and upon the payment of the costs of such proceedings and the execution of a good and sufficient bond conditioned that such article shall not be sold or disposed of contrary to the provisions of this chapter or the laws of any State or Territory in which sold, the court may by order direct that such article be delivered to the owner thereof to be destroyed or brought into compliance with the provisions of this chapter under the supervision of an officer or employee duly designated by the Administrator, and the expenses of such supervision shall be paid by the person obtaining release of the article under bond."

It, therefore, is clearly within the sound discretion of the trial court whether the reprocessing of a condemned article is to be allowed. United States v. 1322 Cans of Black Raspberry Puree, D.C., 68 F.Supp. 881; United States v. 143 Packages of Nue-Ovo, D.C., 51 F.Supp. 1; United States v. Two Cans of Oil, D.C., 268 F. 866. And, of course, this decision of the trial judge can be reversed by us on appeal only for a manifest abuse of discretion by the trial judge.

■ From the evidence submitted at the condemnation trial the jury found that the butter in question consisted in part of decomposed substance and in part of filthy substance in substantial enough quantity to be adulterated within the terms of the Act, 21 U.S.C.A. § 342(a) (3). As was stated by the District Court in its opinion:

"The evidence which was before the jury on the question of decomposed substances related mainly to mold mycelia count, which, as to each churn of butter, was found to be in excess of that permitted in practice by the Food and Drug Administration.

"The evidence on the question of filth was of two kinds: first, that much of the cream which found its way into the vats of the company for the manufacture of butter contained, before filtering, some flies, maggots, mites, fly eggs, and in rare cases, rodents; and secondly, that the manufactured butter had in it numerous hard insect parts, feathers, barbules, mites, rodent hairs, maggots and fly eggs, for the most part invisible to the naked eye, and discernible only with the use of a microscope."

At the hearings on the motion for reprocessing the butter the Government, through the evidence of qualified experts of the Food and Drug Administration, showed that insects, mites and fly eggs contain fatty and oily substances as inherent

constituents of their anatomy; and that when butter or cream becomes contaminated with any such insect material the fatty portions, being soft and liquid at ordinary temperatures, dissolve into the fat of the cream or butter and completely merge therewith. The trial judge, therefore, refused to allow the salvage of the butter because no process was shown, or in fact even known, which would remove soluble insect fats from the butter oil. The testimony was to the effect that the process proposed by the claimant for renovating the butter would remove only the insoluble insect parts and that the portion of the contamination which had become soluble could not be separated. There actually is no scientific method by which the insect fat or oil could even be detected in the finished product since it had become amalgamated with the butter fat.

As a result, the claimant advances the contention that inasmuch as the presence of insect fats cannot be detected, no showing has been made that such soluble filth is present in the condemned butter, and, consequently, all that is necessary in order to salvage the butter is to remove the insoluble extraneous matter, which claimant alleges is the only filth that has been actually proved to be in the product. We think that this argument is well answered by the District Judge: "Whole insects, maggots and fly eggs were in the cream. It was subjected to heating, agitation, and filtration under pressure. It is hardly reasonable to suppose that soft bodies, made softer by the application of heat, would not be crushed by the mechanical processes of filtration. Since the butter fat passed through the filters, it is an inescapable conclusion that insect fat also passed through."

The claimant next contends that even though insect fat should be present in the butter after reprocessing, it would be in such an infinitesimal quantity that it could not contaminate the butter oil. It is true that the courts have recognized that adulteration of foodstuffs may be so slight as to come under the maxim de minimis non curat lex. See A. O. Anderson & Co. v. United States, 9 Cir., 284 F. 542; United States v. 184 Barrels Dried Whole Eggs, D.C., 53 F.Supp. 652; United States v. 133 Cases of Tomato Paste, D.C., 22 F.Supp. 515; and administrative tolerances for decomposition have been adopted by the Food and Drug Administration. No tolerance for filth in butter, however, has ever been established under the Act. Claimant is unable to cite any case wherein food found to be filthy within the meaning of the Act has not been condemned.

The jury was properly instructed that in order to make a finding that the butter consisted in part of filthy substance it must be satisfied that the filth was present in a substantial degree. It was also instructed that if it found the hard parts of an insect's body in the butter, the normal inference would be that the soft parts of the insect were also in the butter. The jury made a finding of filth in the butter, and since the soluble insect parts could not be removed by the reprocessing method, we are unable to say that this insect fat should be treated as coming within the de minimis rule.

It was for the District Judge to say whether the claimant should be allowed to reprocess the butter and then offer it to the public as fit for human consumption. We cannot substitute our judgment for his in the determination of this question. Our review is limited to the inquiry as to whether his action in overruling the claimant's motion was a clear abuse of judicial discretion, that is, arbitrary action unwarranted by the facts of the case. Home Owners' Loan Corporation v. Huffman, 8 Cir., 134 F.2d 314; In re A. Roth Co., 7 Cir., 125 F.2d 396. The record on this appeal does not disclose any such abuse of discretion on the part of the trial judge.

The judgment of the District Court is accordingly affirmed.

Affirmed.