UNITED STATES of America,
Plaintiff,

v.

CAPITAL CITY FOODS, INC., a corporation, trading as Schultz Creamery, and John Schultz, an individual, Defendants.

Crim. No. 638.

United States District Court,
D. North Dakota,
Southwestern Division.

July 12, 1972.

David Peterson, Asst. U. S. Atty., Bismarck, N. D., Richard A. Shupack, Robert Wilmoth, Food and Drug Administration, Washington, D. C., for plaintiff.

Leonard H. Bucklin, Zuger, Bucklin & Zuger, Bismarck, N. D., for defendants.

## MEMORANDUM AND DECISION

### VAN SICKLE

This is a criminal prosecution by information, based on a claimed violation of 21 U.S.C. § 301 et seq. (The Federal Food, Drug and Cosmetic Act).

Specifically, the defendants are charged with having introduced, or delivered for introduction, into interstate commerce, food that was adulterated (21 U.S.C. § 331(a)). The food is claimed to be adulterated because it consisted in part of a filthy substance, i. e., insect fragments. 21 U.S.C. § 342(a) (3).

Section 342(a) (3) provides that the food is adulterated if it consists in whole or in part of any filthy, . . . substance, or if it is otherwise unfit for food. Insect fragments in other than infinitesimal quantity are filth. United States v. Cassaro, Inc., 443 F.2d 153 (CAI 1971).

I apply § 342(a) (3) disjunctively, in accordance with the mandate of Salamonie Packing Co. v. United States, 165 F.2d 205 (CA8 1948). That is, I do not require that the food is, by virtue of filth, unfit for human consumption.

But, the presentation of this case has squarely raised these problems:

1. Since the Food and Drug Administration has not promulgated standards of allowable foreign matter in butter, is that not in itself a standard of zero allowance of foreign matter?

2. If the standard is zero allowance of foreign matter, is such a standard reasonable?

3. In any event, has the government proved sufficient foreign matter to raise its proof above the objection of the maxim de minimis lex?

The government was allowed great freedom to introduce testimony pointing to unclean operating conditions in the creamery. But, this testimony was rebutted by the United States Agricultural Department Inspector, and, since the criminal charge was not laid under § 342(a) (4), the defendants, properly, had not prepared a rebuttal; and, in argument, counsel for the United States admitted that United States made no claim of improper operating conditions.

The facts show that miniscule insect fragments were discovered in the butter, and these fragments were identifiable under a 470 power microscope. Some of the fragments were discernable, although none were identifiable with the naked eye. The manufacturing process, while not condemned by the government, did not assure a filter between the raw milk and the pasteurization or cooking process (although there were two in-line filters between the pasteurization and churning units). Thus, we can assume any fatty substance reasonably related to the miniscule insect fragments was cooked and distributed into the finished butter. The defendant manager was shown to be responsible for the conduct of the dairy.

Although the defendant corporation, and manager, were charged under a criminal information, the butter involved was allowed to continue through the chain of commerce.

As shown by the analysis of evidence, which I present later, my concern in this case is the claim of the government that:

a) The failure of the government to establish under 21 U.S.C. § 346, a standard of permissible deleterious substance which may be tolerably added to butter when, in the manufacturing process it cannot be avoided, establishes as reasonable a standard of zero allowance, and

b) therefore, in effect, the maxim of "de minimis non curat lex" has no application in butter cases.

But, in its "Notice of Proposed Rule Making On Natural or Unavoidable Defects in Food for Human Use that Present No Health Hazard", of the Food and Drug Administration, published in the Federal Register, Volume 37, No. 62, March 30, 1972, the introduction language includes this:

"Few foods contain no natural or unavoidable defects. Even with modern technology, all defects in foods cannot be eliminated. Foreign material cannot be wholly processed out of foods, and many containments introduced into foods through the environment can be reduced only by reducing their occurrence in the environment."

I accept as a rational, workable approach, the reasoning of the writer in 67 Harv.L.Rev., 632 @ 644:

"Indeed, if the section were interpreted literally, almost every food manufacturer in the country could be prosecuted since the statute bans products contaminated "in whole or in part". This undesirable result indicates that the section should not receive so expansive a reading. In fact, in several cases judicial common sense has led to recognition that the presence of a minimal amount of filth may be insufficient for condemnation."

The foreign matter found was mainly miniscule fragments of insect parts. They consisted of 12 particles of fly hair (seta), 11 unidentified insect fragments, 2 moth scales, 2 feather barbules, and 1 particle of rabbit hair. The evidence showed that some of these particles were visible to the naked eye, and some, the fly hair, would require a 30x microscope to see. They were identifiable with the aid of a 470x microscope. The only evidence as to size showed that there was one hair, 1½ millimeters

long, and one unidentified insect fragment 0.02 millimeters by 0.2 millimeters.

In all, 4125 grams (9.1 lbs.) of butter were checked and 28 miniscule particles were found. This is an overall ratio of 3 miniscule particles of insect fragments per pound of butter.

Thus, there having been no standard established, and no showing that this number of miniscule fragments is excludable in the manufacturing process, I find that this contamination is a trifle, not a matter of concern to the law.

The defendants are found not guilty. Judgment will be entered accordingly.