PROVIMI, INC.

v.

The UNITED STATES.

No. 524–80C.

United States Court of Claims.

May 19, 1982.

John H. Schaller, Milwaukee, Wis., atty. of record, for plaintiff.

Thomas W. B. Porter, with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D. C., for defendant; Mary K. Pendergast, Food and Drug Administration, Washington, D. C., of counsel.

Before FRIEDMAN, KASHIWA and BENNETT, Judges.

## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BENNETT, Judge:

This case presents a novel question in food and drug law, whether the erstwhile owner of adulterated products that have been condemned under the Federal Food, Drug, and Cosmetic Act retains any interest in those products, compensable in this court, between the time of their condemnation and the time that the erstwhile owner obtains their release for reconditioning. Plaintiff complains with respect to certain of its products that had been so condemned that defendant engaged in meritless and dilatory opposition to its efforts to obtain release and that release was delayed so long that the products spoiled. Plaintiff seeks recovery therefor in the sum of $113,958.03. Upon consideration of the briefs, without oral argument, we hold as a matter of law that there can be no recovery.

Plaintiff is a Wisconsin corporation engaged in the manufacture and sale of premixed and finished animal feeds. As part of its operations, plaintiff maintains a manufacturing facility and a warehouse in Flanders, New Jersey.

The present action concerns various unmedicated animal feeds, medicated ani-

mal feeds and animal drugs that were seized at the Flanders warehouse by a United States marshal, on May 12, 1976, pursuant to a warrant of arrest. This warrant had issued from the United States District Court for the District of New Jersey in an in rem action by the United States, *United States v. Articles * * * Provimi, etc.*, Civ.No. 76–871 (filed May 12, 1976), alleging that the materials were adulterated with rodent filth and held under insanitary conditions in violation of 21 U.S.C. § 342(a)(3) and (4) (1976) (for the unmedicated feed) and 21 U.S.C. § 351(a)(1) and (2) (1976) (for the medicated feed and the drugs). This complaint also was broadened, first by understanding of the United States and Provimi and later by formal amendment, to include allegations under 21 U.S.C. § 351(a)(5) and (6) that the medicated feeds and the drugs were adulterated with "new animal drugs" within the meaning of 21 U.S.C. § 321(w)(3) (1976). These drugs had been obtained from a foreign supplier unapproved by the Food and Drug Administration (FDA).

On June 4, 1976, plaintiff intervened in the condemnation proceedings and claimed ownership of the seized products. On October 22, 1976, plaintiff and defendant entered into a partial consent decree, covering only the unmedicated feed. Under this agreement, Provimi admitted that the feed was adulterated, consented to its condemnation and received release of the feed for reconditioning. As we shall explain more fully, releasing condemned products for reconditioning is one of the condemning court's options for disposing of condemned materials, 21 U.S.C. § 334(d) (1976), and the privilege of the erstwhile owner to have reconditioning is at the court's discretion and is conditioned on the posting of a bond and upon supervision by the FDA. *Id.* Provimi followed these procedures with respect to the unmedicated feed and eventually was able to market most of it.

The seizure of the materials not covered by the consent decree came up for hearing on December 3, 1976. The only significant issue was whether the remaining materials also could be released for reconditioning.[1] Plaintiff's principal proposal was to mix the adulterated products with large quantities of unadulterated products and thereby dilute the adulterants, the "new animal drugs," to safe levels.[2] Defendant vigorously opposed this plan, asserting that there are no safe levels for unapproved drugs and that mixing only would result in a larger quantity of adulterated material. Noting the "de minimis" doctrine in food and drug law, that de minimis quantities of certain impurities may be permitted, defendant contended that the doctrine only applies to adulterants that are unavoidable, *e.g.*, as by-products of manufacture, and that the doctrine should not be extended to avoidable adulterants. *See 338 Cartons, More or Less, of Butter v. United States*, 165 F.2d 728 (4th Cir. 1947) (more than that which is natural and unavoidable is not de minimis); *United States v. 900 Cases of Peaches*, 390 F.Supp. 1006 (E.D.N.Y.1975) (more than that which is natural and unavoidable is not de minimis); *United States v. Capital City Foods, Inc.*, 345 F.Supp. 277 (D.N.D.1972) (adulterants allowed because de minimis and unavoidable); *United States v. 233 Tins, More or Less * * * Strawberries*, 175 F.Supp. 694 (W.D.Ark.1959) (more than that which is natural and unavoidable is not de minimis); *United States v. 133 Cases of Tomato Paste*, 22 F.Supp. 515 (E.D.Pa.1938) (more than that which is natural and unavoidable is not de minimis). The district judge called for experts to evaluate plaintiff's plan, *United States v. Articles ... Provimi, etc.*, 425 F.Supp. 228 (1977), and

---

1. It is not clear exactly when the medicated feed and the drugs were officially condemned. Facts sufficient to warrant condemnation were stipulated at the December 3, 1976 hearing, but formal condemnation may have occurred as late as December 13, 1978. Since the propriety of the condemnation itself is not disputed, and since plaintiff makes no issue of the formal date, we will assume for this matter that condemnation was effective on December 3, 1976. Certainly both parties and the court acted throughout as if that were the case.

2. The rodent filth adulterants were not considered to pose a serious problem.

finally allowed it, under the de minimis doctrine, by memorandum of December 13, 1978. By that time, however, the products under dispute had spoiled and Provimi determined that they had to be destroyed. This determination was adopted by the district court by memorandum of August 1, 1979.

On September 25, 1980, plaintiff filed its suit in this court. Its basic complaint is that the government's opposition to its reconditioning plan was meritless and dilatory and that plaintiff was thus deprived of the further use of the condemned products. Specifically, plaintiff claims: (1) under 21 U.S.C. § 334, the seizure and condemnation provision of the Federal Food, Drug, and Cosmetic Act, that the government's opposition constituted an illegal exaction of the amount it lost, and (2) under the Constitution that the government's opposition constituted a taking. The case is now before us on defendant's motion for summary judgment and on plaintiff's opposition thereto.

■ Plaintiff's claims are ones of first impression in this court. To analyze them we turn to the familiar formulation of this court's jurisdiction in *Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 599, 372 F.2d 1002 (1967):

[T]he non-contractual claims we consider * * * can be divided into two somewhat overlapping classes—those in which the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum; and those demands in which money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury. In the first group * * * the claim must assert that the value sued for was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation. In the second group, where no such payment has been made, the allegation must be that the particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum.

*Id.* at 605, 372 F.2d at 1007. To paraphrase, non-contractual claims in this court must involve an identifiable interest, either money or property or a right to receive money or property, which interest is kept from the plaintiff by the government. Thus, the success of plaintiff's claims in the present suit, that the government's allegedly meritless and dilatory opposition to its reconditioning plan resulted in either an illegal exaction or a taking, must depend on a showing by plaintiff that the government's actions improperly took an identifiable interest from it.

The rights and obligations of all participants in a reconditioning proceeding are governed wholly by 21 U.S.C. § 334, and it is there that we must look for whatever interest, if any, was retained by Provimi during the district court deliberations on whether reconditioning should be allowed. Section 334 both defines any statutory rights to have reconditioning and delimits any post-condemnation property rights. The section provides, in sub. (d)(1), that:

Any food, drug, device, or cosmetic condemned under this section shall, after entry of the decree, be disposed of by destruction or sale as the court may * * * direct and the proceeds thereof, if sold, less the legal costs and charges, shall be paid into the Treasury of the United States * * *: *Provided*, That after entry of the decree and upon the payment of the costs of such proceedings and the execution of a good and sufficient bond * * *, the court may by order direct that such article be delivered to the owner thereof to be destroyed or brought into compliance with the provisions of this chapter under the supervision of an officer or employee duly designated by the Secretary, and the expenses of such supervision shall be paid by the person obtaining release of the article under bond.

■ Under this section, it is clear that plaintiff did not have an identifiable interest during the time that defendant was engaging in its allegedly meritless and dilatory behavior, between the condemnation and the release for reconditioning. First,

plaintiff had no statutory right to have reconditioning permitted. The statute only provides that the court "may" order reconditioning as one of four wholly permissive choices. It is discretionary. *United States v. Allan Drug Corp.*, 357 F.2d 713 (10th Cir.), *cert. denied*, 385 U.S. 899, 87 S.Ct. 203, 17 L.Ed.2d 131 (1966); *Research Laboratories, Inc. v. United States*, 167 F.2d 410 (9th Cir.), *cert. denied*, 335 U.S. 843, 69 S.Ct. 65, 93 L.Ed. 393 (1948); *338 Cartons, More or Less, of Butter v. United States*, 165 F.2d 728 (4th Cir. 1947); *United States v. 76,552 Pounds of Frog Legs*, 423 F.Supp. 329 (S.D. Tex.1976); *United States v. 1322 Cans, More or Less, of Black Raspberry Puree*, 68 F.Supp. 881 (N.D.Ohio 1946). As such, it cannot provide a basis for relief in this court. *See United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Second, plaintiff had no property right after the condemnation. The statutory scheme plainly works a complete divestiture of the property rights of the owner of the condemned goods. The court may order the goods destroyed without compensation, may order them sold and have the proceeds kept by the United States, may deliver them to the erstwhile owner for destruction or may deliver them for reconditioning.[3] In only this fourth option can the old owner recover any of the value of the condemned articles, and that recovery is conditioned on payment of legal fees, the posting of a bond, reconditioning under supervision of the FDA and payment of the cost of that supervision. Only under these narrow circumstances is there any revesting of ownership. Plaintiff argues in this context that the statutory wording is that the district court may order that condemned goods be "delivered to the owner thereof" for reconditioning, implying that ownership rights have continued. This implication, however, is negatived by the plain text of the statute, as we have just outlined, and we cannot conclude other than that when Congress chose the word "owner" it did not best express its otherwise obvious meaning. Plaintiff's statutory and constitutional claims hence must fail. Nothing was exacted from plaintiff and nothing was taken. This court cannot give relief for a mere expectancy.

Plaintiff argues for the application of such cases as *United States v. One 1965 Chevrolet Impala Convertible—United States v. One 1967 Pontiac Bonneville Convertible*, 475 F.2d 882 (6th Cir. 1973), in which plaintiffs have received awards for the devaluation of property occurring between a seizure, resulting in a forfeiture, and a later vacation of that forfeiture. In *One 1965 * * * Convertible*, two cars had been seized and forfeited for violations of Internal Revenue wagering tax laws. One was sold by the government and the other was held. When the forfeitures were later vacated, the owners not only received their property back, the car in one case and the proceeds of the sale in the other, but also were awarded depreciation from the times of the seizures. The court held that the lost value represented by depreciation was an illegal exaction under 28 U.S.C. § 1346(a)(2), the district court's parallel to this court's jurisdictional statute, 28 U.S.C. § 1491. Plaintiff reasons from this that it is entitled to some award for the post-condemnation spoilage of its products. *One 1965 * * * Convertible*, however, is a very different case than the one before us. That case involved true deprivations of property because the divesting proceedings, the forfeitures, were later vacated. The owners of the cars were seen by the district court as never having rightfully lost their ownerships, and so the devaluations of the cars during their retentions by the government were indeed takings. In our case, the condemnation was entirely proper and effective, and Provimi lost all rights to the condemned goods. Unlike the plaintiffs in *One 1965 * * * Convertible*, Provimi had no property rights during the period of retention, and so there was no taking.

---

3. There is also a judicially recognized category for "constructive" destruction, *i.e.*, retention by the government and use for non-food purposes. *See United States v. An Article of Food * * ** *55 Gallons * * * Honey*, No. Adm. 78–6–D (D.N.H. May 15, 1979) (adulterated honey retained by the government and used by the Park Service as bear bait).

Plaintiff also opposes defendant's motion for summary judgment on the ground that there are disputed questions of fact. Specifically, plaintiff questions the good faith of the government,[4] and the government seems to have questioned at one point whether the released products actually had to be destroyed. Neither of these questions figures into our disposition of the case, however, so their resolutions are unnecessary.

In sum, plaintiff simply has failed to show either that it had some statutory right to have reconditioning permitted or that it had some property right that the government took away. There is no basis on which this court can grant relief.

Defendant's motion for summary judgment is granted. The petition is dismissed.

---

**4.** To the extent that plaintiff's suit is reduced to a bare assertion that the government used the judicial system in bad faith to prevent plaintiff from gaining permission to recondition, it is a claim most akin to malicious prosecution. This sounds in tort and is beyond our jurisdiction. 28 U.S.C. § 1491.