Grover H. HOPE and Mary
L. Hope, Plaintiffs,

v.

UNITED STATES, Defendant.

No. 439–89T.

United States Claims Court.

Aug. 16, 1991.

---

Wayne W. Bost, Dallas, Tex., atty. of record, for plaintiffs.

Donna K. Feinberg, Dept. of Justice, Tax Div., Claims Court Section, with whom were Terry T. Coles, Mildred L. Seidman, Chief, Claims Court Section, Tax Div., and Shirley D. Peterson, Asst. Atty. Gen., Washington, D.C., and attys. of record, for defendant.

## OPINION

HORN, Judge.

On August 10, 1989, the plaintiffs, Grover H. Hope and Mary L. Hope, filed their original complaint under section 7422 of the Internal Revenue Code (26 U.S.C. § 7422 (1988)), claiming entitlement to the refund of income taxes, interest and penalties, they assert were "erroneously" and "illegally" assessed and collected with respect to the calendar years 1984, 1985 and 1986. The plaintiffs claim a charitable contribution deduction, pursuant to 26 U.S.C. § 170(a), (c) (1982 & Supp. II 1984), resulting from what plaintiffs allege was a "bargain sale" of Grover Hope's property to the Texas Turnpike Authority (TTA) in 1984, in conjunction with the condemnation by the TTA for a proposed toll road extension. Plaintiffs further claim that they are entitled to carry the claimed deduction over into 1985 and 1986, pursuant to 26 U.S.C. § 170(d)(1)(A) (1982 & Supp. II 1984). In addition, plaintiffs also dispute penalties and interest assessed under 26 U.S.C. §§ 6653, 6661 (1982 & Supp. II 1984) for negligent or intentional disregard of the rules and substantial underpayment of taxes for tax years 1984, 1985 and 1986.

Jurisdiction in the United States Claims Court is undisputed. After the complaint was filed in this court, plaintiffs filed a Motion for Summary Judgment, asking this court to determine, as a matter of law, their entitlement to a charitable deduction in tax year 1984, or alternatively, in tax year 1986, in the amount of $1,781,089.50, for the alleged contribution of land to the TTA. The defendant filed a Cross–Motion for Summary Judgment and a Brief in Opposition to Plaintiffs' Motion for Summary

Judgment in which the defendant maintains that the plaintiffs are not entitled to a charitable deduction as a matter of law. The defendant alleges that the issues of charitable intent and market value need not be addressed in the instant case because when the landowner was paid monies as a result of the condemnation proceedings, that amount represents just compensation for his property, leaving no remaining value to be donated and used as the basis for a charitable deduction. If the court disagrees, however, the defendant suggests, in the alternative, that plaintiffs' request for summary judgment should be denied because there are issues of material fact in dispute regarding Mr. Hope's charitable intent at the time the property was transferred, and regarding the fair market value of the condemned property.

After a courtroom conference in the case, the court requested additional briefing from both parties on the following issue:

> After a negotiated settlement agreement to resolve ongoing litigation has been signed, as a result of which the litigation has been dismissed, and the taxpayer has received payment for the property condemned, whether there remains anything of value that a taxpayer may use as the basis for a charitable gift tax deduction?

Based on a careful review of the pleadings filed and the oral presentations offered by the parties, for the reasons discussed more fully below, the defendant's Cross–Motion for Summary Judgment is, hereby, GRANTED.

## BACKGROUND

Plaintiffs, Grover and Mary Hope, claim a refund of income taxes, interest and penalties for the taxable years 1984, 1985 and 1986, which is disputed by the government. The parties in this case, however, did agree to the following relevant facts for the purposes of the summary judgment proceedings. Plaintiff Grover Hope purchased a certain tract of land in Dallas County, Texas in 1969. In July, 1984, the TTA condemned and took possession of a 1.2 acre parcel in fee simple and an easement on a

0.08 acre parcel of Grover Hope's tract to be used for an extension of the Dallas North Tollway. At a hearing in 1984 before the Special Commissioners appointed to determine the value of the condemned property, pursuant to Texas condemnation procedures, Grover Hope was awarded $607,396.45, which was deposited in the registry of the state court by the TTA. At that time, as allowed by the Texas Property Code, the TTA obtained the right to enter and use the land, pursuant to Tex. Prop.Code Ann. § 21.021(a) (Vernon 1984), while Grover Hope retained the right to litigate to obtain additional compensation from the TTA, up to the fair market value of the property. In 1986, Grover Hope filed objections to the commissioners' findings in state court. Prior to the trial, the parties signed a Settlement Agreement, resulting in a dismissal of the lawsuit. Pursuant to a Settlement Agreement, executed on December 16, 1986, the TTA and Grover Hope agreed to a payment to Grover Hope of $2,257,533.50 for the condemned property, in settlement of the condemnation proceedings and ongoing litigation. Thus, as a result of the settlement, Grover Hope received an additional $1,650,137.05 in 1986, which, when added to the $607,396.45 previously awarded, equalled $2,257,532.50, as the full, agreed-upon compensation for the condemned property.

The settlement agreement, signed by Grover Hope and the TTA, states that,

> Whereas, the Authority and [Grover] Hope desire to compromise and settle all claims and causes of action arising from and relating to said condemnation proceeding and intend that the full terms and conditions of the compromise and settlement be set forth in this Settlement Agreement.

> and

> In consideration for the settlement of the above referenced condemnation proceeding and the conveyance of the Property and Easement, the Authority shall pay [Grover] Hope ... the amount of.... ($2,257,533.50) which [Grover] Hope agrees to accept from the Authority as

the sufficient monetary consideration from it for the Property and Easement, and for any severance damages, or any damages to or diminution in the value of other lands belonging to [Grover] Hope, ... It being understood that this does not constitute an agreement that the amount being paid hereunder is the fair market value of the Property and Easement or any other interests being acquired, and it being further understood that said amount is a negotiated settlement of litigation between the parties hereto, and for any other claim [Grover] Hope may have against the Authority.

In addition, the Special Warranty Deed and the Grant of Easement With Special Warranty Deed, both signed by Grover Hope, contain the following language:

That GROVER H. HOPE ... for and in consideration of the sum of ... ($10.00) and other good and valuable consideration to Grantor in hand paid by the TEXAS TURNPIKE AUTHORITY, ... the receipt and sufficiency of which is hereby acknowledged and confessed, has GRANTED, SOLD AND CONVEYED ... (the property) ...

and

The payment of the purchase price[1] for the property interests purchased hereunder by Grantee shall be considered full compensation for such interests, and for severance damages, if any, or any damages to, or diminution in the value of, other lands belonging to Grantor, that may be claimed or asserted by virtue of such conveyance to and use of the Property by Grantee.

Prior to the settlement with the TTA, plaintiffs allege that Grover Hope obtained four separate appraisals to try to determine the fair market value of the condemned property as of July 30, 1984. Based on their own calculations, the plaintiffs now claim that the fair market value

of the condemned property was approximately $4,038,623.00.

Because of the discrepancy between the settlement price and what the plaintiffs now allege was the fair market value of the property, the plaintiffs, unilaterally, chose to characterize the condemnation transaction as a "bargain sale." Plaintiffs, therefore, maintain in the Complaint filed before this court that, because they received less than fair market value in settlement of the condemnation proceedings and litigation, they are entitled to take a charitable contribution deduction in the amount of $1,781,088.50 on their income tax returns, and that due to the 50% of the adjusted gross income limitation, only $1,275,466.00 of such amount was deducted for 1984.

The parties do not dispute that the Hopes deducted the difference between what they allege is the fair market value of the condemned property and what Grover Hope received in settlement of the condemnation proceedings, as a charitable contribution on their federal income tax returns for the years 1984, 1985 and 1986. Moreover, because of the limitation in section 170(d), which dictates that the amount of a charitable contribution used for a deduction on a tax return cannot exceed 50% of the adjusted gross income in a given year, only $1,275,466.00 was claimed as a deduction by the Hopes on their amended 1984 return. The Hopes tried to carry the remainder of the deduction over into 1985 and 1986, as they assert is allowed under 26 U.S.C. § 170(d) (1982 & Supp. II 1984).

Grover and Mary Hope filed timely claims for refunds for the 1984, 1985 and 1986 tax years. The Internal Revenue Service (I.R.S.) did not allow the Hopes' attempted use of a charitable donation deduction for the value of the condemned property in excess of the total compensation received from the TTA. In 1988, the Hopes received an assessment for additional taxes, penalties, and interest owed on the

---

**1.** The quoted language is from the Special Warranty Deed signed by Grover Hope. In the Grant of Easement with Special Warranty, also signed by Grover Hope, the first phrase of paragraph two "The payment of the purchase price" is replaced with the phrase "or the consideration exchanged between the parties hereto." In all other respects, the two documents are the same.

amount deducted as charitable contributions in the three tax years in question. The following table represents the assessments, by the I.R.S. in each year, as stated in plaintiff's complaint.

| For | 1984 | 1985 | 1986 |
|---|---|---|---|
| Additional Tax: | $241,566.00 | $276,746.00 | $330,028.00 |
| Negligence Penalty (5%) § 6653(a)(1): | 12,078.00 | 13,837.00 | 16,501.00 |
| Penalty Interest (50% of § 6601 interest) § 6653(a)(2): | 42,398.13 | 28,885.69 | 16,902.67 |
| Substantial Understatement Penalty § 6661: | 60,391.00 | 69,187.00 | 82,507.00 |
| Interest: | 298.97 | | |
| Interest on tax and § 6661 penalty: | 108,413.41 | 72,224.44 | 42,267.68 |
| Interest on unpaid balance: | 1,967.31 | | |
| Total Additional Assessment: | $467,111.82 | $460,880.13 | $488,206.35 |

Plaintiffs paid the assessed amounts, filed amended returns for 1984, 1985 and 1986, and filed a claim for a refund in the assessed amounts. According to the plaintiffs' Complaint, the refund claim has neither been allowed nor disallowed by the I.R.S. The plaintiffs filed their Complaint in the United States Claims Court on August 10, 1989, claiming entitlement to a charitable donation deduction of $1,781,-088.50 in 1984 or, alternatively in 1986, which plaintiffs argue should entitle them to a refund of $467,111.82 for their 1984 tax return, $460,880.13 for their 1985 tax return, and $488,206.35 for their 1986 tax return.

## DISCUSSION

The summary judgment procedures in the United States Claims Court are set out Rule 56 of the Rules of the United States Claims Court (RUSCC), which is closely patterned after Rule 56 of the Federal Rules of Civil Procedure (FRCP). Rule 56(c) of both rules provides in pertinent part:

the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

RUSCC 56(c); FRCP 56(c).[2]

In *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986), the Supreme Court outlined the standard procedures by which motions for summary judgment should be governed and wrote:

Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*See, generally, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475

---

**2.** Since RUSCC 56(c) is closely patterned upon FRCP 56(c), precedent under the FRCP is relevant to interpreting RUSCC 56(c). *Lichtefeld–*

*Massaro, Inc. v. United States*, 17 Cl.Ct. 67, 70 (1989).

U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The movant has the "burden of showing the absence of a genuine issue as to any material fact ...," *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Moreover, only disputes regarding facts which might affect the outcome of the suit under the governing law are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. at 2509.

In the instant case, the parties do not agree on the characterization of the transaction as a "bargain sale," on the fair market value of the property, or on the charitable intent of Grover Hope. The factual differences, however, need not be resolved by this court in order to address the principal, legal issue raised in the Defendant's Cross–Motion for Summary Judgment: whether, after the condemnation proceedings, the Hopes retained any property interest which they could claim as a charitable contribution under 26 U.S.C. § 170(c). Based on those facts upon which the parties do concur, and the discussion which follows, the court agrees with the defendant that the existing issues of material fact in dispute on fair market value and Grover Hope's contemporaneous intent do not preclude the entry of summary judgment in the case before the court.

A charitable donation is defined in 26 U.S.C. § 170(c)(1) as "a contribution or gift to or for the use of—[a] state ..., but only if the contribution or gift is made for exclusively public purposes." In this case, there is no dispute that property was transferred to the state for a public purpose. The remaining issue, however, is whether the transfer occurred without receipt or expectation of benefit in return and, therefore, whether the transfer of property in the instant case involved a contribution or a gift?

The Supreme Court has stated that: "the conclusion whether a transfer amounts to a 'gift' is one that must be reached on consideration of all the factors." *Commissioner v. Duberstein*, 363 U.S. 278, 288, 80 S.Ct. 1190, 1198, 4 L.Ed.2d 1218 (1960). Subsequently, courts have interpreted a contribution or gift under 26 U.S.C. § 170 as having two primary elements: that there is a transfer of money or property, and that there is, in the transfer, an absence of a receipt or expectation of a financial or economic benefit, commensurate with the money or property transferred. *See United States v. American Bar Endowment*, 477 U.S. 105, 116, 118, 106 S.Ct. 2426, 2433, 2433–34, 91 L.Ed.2d 89 (1986); *Transamerica Corp. v. United States*, 902 F.2d 1540, 1543 (Fed.Cir.1990); *see also Hernandez v. Commissioner*, 490 U.S. 680, 690, 109 S.Ct. 2136, 2144, 104 L.Ed.2d 766 *reh'g denied*, 492 U.S. 933, 110 S.Ct. 16, 106 L.Ed.2d 630 (1989) (stating that for there to be a charitable contribution, there must be "no expectation of any *quid pro quo* "); *Transamerica Corp. v. United States*, 902 F.2d 1540, 1544 (Fed.Cir.1990) (stating that "a purported gift is at least presumptively negated by the receipt of a substantial benefit in return"). Several Tax Court cases also have included as an element that the purported gift must be voluntary. *See Grinslade v. Commissioner*, 59 T.C. 566, 573 (1973); *Sutton v. Commissioner*, 57 T.C. 239, 242 (1971); *DeJong v. Commissioner*, 36 T.C. 896, 899 (1961).[3]

---

**3.** A slightly different way of stating the definition of what constitutes a valid gift was articulated by the United States Tax Court in *Guest v. Commissioner*, 77 T.C. 9, 15 (1981), as follows:

A gift is completed when all of the following six elements are present:

1) a donor competent to make the gift; 2) a donee capable of taking the gift; 3) a clear and unmistakable intention on the part of the donor to absolutely and irrevocably divest himself of the title, dominion, and control of the subject matter of the gift, [at the present time]; 4) the irrevocable transfer of the present legal title and of the dominion and control of the entire gift to the donee, so that the donor can exercise no further act of dominion or control over it; 5) a delivery by the donor to the donee of the subject of the gift or of the most effectual means of commanding the dominion of it; 6) acceptance of the gift by the donee....

*Guest v. Commissioner*, 77 T.C. 9, 15–16 (1981) (quoting from *Weil v. Commissioner*, 31 B.T.A. 899 (1934), *aff'd*, 82 F.2d 561 (5th Cir.1936), *cert. denied*, 299 U.S. 552, 57 S.Ct. 14, 81 L.Ed. 406 (1936)).

In the instant case, Grover Hope transferred title to his land to the TTA, and received value for the property, pursuant to Texas eminent domain proceedings. At issue, therefore, is whether there was any money or property left in Grover Hope's possession which he could contribute as a charitable donation after the resolution of the condemnation proceedings, and on which he could base a charitable donation. Moreover, even if Grover Hope had retained any rights to the property, following the institution and conclusion of the condemnation proceedings, could the alleged gift by Grover Hope to the TTA be classified as having been made with the requisite donative intent, and without any expectation of financial or economic benefit on his part? Defendant denies that the charitable deduction by the plaintiffs was proper and contends in this court that the amount of compensation determined through a proper condemnation proceeding, especially given the settlement agreement, represents the complete amount due to the landowner after the taking. The defendant, therefore, argues that there remains in the plaintiff no excess value to be donated as a charitable contribution. To the contrary, plaintiffs, characterize the agreement with the TTA as a "bargain sale," after which they claim they are entitled to donate the excess value of the property above the price they were paid following the condemnation, settlement agreement, and avail themselves of the right to take a charitable deduction.

Title 26, section 1.170A–1(c)(1) (1990) of the Code of Federal Regulations (C.F.R.) provides that "If a charitable contribution is made in property other than money, the amount of the contribution is the fair market value of the property at the time of the contribution...." 26 C.F.R. § 1.170A–1(c)(2) (1990) further provides that "The fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts."

In certain circumstances, a "bargain sale" to charity has been allowed by the Tax Court as a method of charitable contribution whereby the taxpayer is entitled to a charitable deduction equal to the difference between the fair market value of the property and the amount realized from the sale. *Stark v. Commissioner*, 86 T.C. 243, 255–256 (1986); *Judge v. Commissioner*, 45 T.C.M. (P–H) 1243, 1248 (1976).

It appears, however, that recognition of a donation of the difference between the fair market value and the actual transfer price from a "bargain sale," in the context of condemnation proceedings, would represent an unusual, if not novel, tax application of the "bargain sale," charitable donation concept. Plaintiffs cite to *Maier Brewing Co. v. Commissioner*, 56 T.C.M. (P–H) 1960 (1987), and argue that the facts in that case are similar to those in the instant case. In *Maier,* the Tax Court analyzed the plaintiff's claim to a charitable contribution of the excess value of condemned property, above the amount paid in compensation, using a "bargain sale" analysis. *Id.* at 1983. The Tax Court rejected the claim in *Maier.* Nonetheless, the plaintiffs in the instant case try to place great weight on the fact that the *Maier* court rejected the claim to the charitable contribution, not because it involved condemnation proceedings, but, instead, because of the failure by the *Maier* plaintiffs to show the required donative intent and because the transfer of property in *Maier* did not constitute a gift or contribution under 26 U.S.C. § 170, since the amount received by that petitioner represented adequate consideration for the property.

The plaintiffs cite to the *Maier* court as support for their theory that a charitable contribution of the difference between the value of property and the sales price realized might, under the proper circumstances, even in a condemnation proceeding, be used as the basis for a valid charitable deduction. *Maier,* 56 TCM (P–H) at 1984. This court notes, however, that in issuing its decision, the *Maier* court wrote: "Moreover, under the facts and circumstances surrounding the transaction at issue, we cannot say that the transaction was voluntary." *Id.* at 1983–4. Although it is difficult from this last quote to be

certain, it is possible that, to the contrary, the *Maier* court actually was suggesting that when there has been a completed taking in a condemnation proceeding, the statutory and regulatory requirement for qualifying as a tax deduction, that the underlying donation be voluntary, will be absent.

As is discussed more fully below, this court is of the opinion that a charitable contribution tax deduction should not be based on a completed, condemnation proceeding, in which the state takes the land for a legitimate public purpose, and the landowner receives compensation in accordance with the applicable statutes and regulations. Once the landowner receives compensation and no further appeals of the amount paid to the landowner can be brought, the value received should be deemed to equal the "just" compensation[4] to which a landowner is entitled under the constitutional protections. In the instant case, the plaintiffs are even less entitled to take a charitable deduction because Grover Hope's land was condemned, pursuant to state condemnation procedures which have been found in accordance with the United States Constitution, and the plaintiffs were paid compensation, as a result of a negotiated settlement agreement, which Grover Hope voluntarily signed. Plaintiffs should not now be allowed to receive additional value for the property in the form of a charitable deduction on their taxes.

Amendment V to the United States Constitution provides protection to landowners by stating that "No person shall be held ... nor be deprived of life, liberty, or property, without due process of law, nor shall private property be taken for public use without *just* compensation" (emphasis added). Similarly, the Texas State Constitution states that "No person's property shall be taken, damaged, or destroyed for or applied to public use without *adequate* compensation being made, unless by the consent of such person ..." (emphasis added).[5]

The theory of eminent domain, as set forth in the fifth amendment to the United States Constitution, and essentially mirrored in art. 1, § 17, of the Texas Constitution, provides that an individual's property may be taken for public use if "just" ("adequate" in Texas) compensation is awarded. The fifth and fourteenth amendments additionally provide that federal and state governments shall not take property from an individual without due process of law. It has long been settled that the awarding of "just" compensation in the context of an eminent domain taking also invokes due process requirements. *See e.g., Hale v. Lavaca County Flood Control District*, 344 S.W.2d 245, 248 (Tex.Civ.App.1961); *Bailey v. Anderson*, 326 U.S. 203, 205, 66 S.Ct. 66, 67, 90 L.Ed. 3, *reh'g denied*, 326 U.S. 691, 66 S.Ct. 228, 90 L.Ed. 407 (1945). Governments (both federal and state) have established condemnation procedures to ensure compliance with the constitutional obligation to pay individuals "just" compensation when their property is taken and to allow those individuals a due process right to an objective determination of what constitutes "just" compensation. These procedures allow a former property owner to bring an action in the appropriate court for a judicial determination of what amounts to "just" or "adequate" compensation, if the sum of the compensation is in dispute. After the fair market value has been proven, most courts will grant that price as the amount to be remunerated to the former property owner.

■ The Texas legislature has enacted procedures through which a state entity may take private property. Tex.Prop.Code Ann. § 21.012–21.022. In *Joiner v. Dallas*, the Federal District Court ruled, and was upheld in that ruling, that Texas' procedures satisfy the due process requirements of the fourteenth amendment for the taking of private property. *Joiner v. Dallas*, 380 F.Supp. 754 (N.D.Tex.), *aff'd*, 419 U.S. 1042, 95 S.Ct. 614, 42 L.Ed.2d 637 *reh'g denied*, 419 U.S. 1132, 95 S.Ct. 818, 42 L.Ed.2d 831 (1975). In addition, the Texas procedures provide the method by which

---

4. Or under the Texas Constitution "adequate" compensation. Texas Constitution, art. 1, § 17.

5. Tex. Const. art. 1, § 17.

the state shall meet the requirements of the fifth amendment to pay just compensation. *Id.* at 777. The procedures provide, in pertinent part, that:

> If . . . this state, [or] a political subdivision of this state, . . . wants to acquire real property for public use but is unable to agree with the owner of the property on the amount of damages, the condemning entity may begin a condemnation proceeding by filing a petition in the proper court.

Tex.Prop.Code Ann. § 21.012(a). Furthermore the petition must state, *inter alia,* that "the entity and the property owner are unable to agree on the damages." *Id.* § 21.012(b). Once condemnation proceedings are deemed necessary, there is a presumption of involuntariness. "The doctrine of eminent domain implies that it is to be exercised against the will of the owner." *City of San Antonio v. Grandjean,* 91 Tex. 430 at 434, 41 S.W. 477 at 479 (1897).

■ Rather than acting as a limitation on the governmental right to take property, the emphasis of the takings clause of the Fifth Amendment to the Constitution is to create a constitutionally derived obligation on the part of the government to pay just compensation. *First English Evangelical Lutheran Church v. United States,* 482 U.S. 304, 315, 107 S.Ct. 2378, 2386, 96 L.Ed.2d 250 (1987), *cert. denied,* — U.S. ——, 110 S.Ct. 866, 107 L.Ed.2d 950 (1990); *Richards v. United States,* 20 Cl.Ct. 753, 757 (1990). As the courts have stated, the purpose of condemnation procedures, therefore, is to ensure that the person whose property is taken receives just compensation as provided for in the Constitution. *Yuba Natural Resources, Inc. v. United States,* 821 F.2d 638, 640 (Fed.Cir.1987). Thus, once an authorized entity has effected a proper condemnation, the government entity is under a duty to pay "just" compensation. *First English Evangelical Church,* 482 U.S. at 315, 107 S.Ct. at 2386 (citing *Armstrong v. United States,* 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554 (1960)).

The theory of "just" compensation was explained by the Supreme Court almost 100 years ago in *Monongahela Navigation Co. v. United States,* 148 U.S. 312, 326, 13 S.Ct. 622, 626, 37 L.Ed. 463 (1893):

> The noun 'compensation,' standing by itself, carries the idea of an equivalent. . . . So that if the adjective 'just' had been omitted and the provision was simply that property should not be taken without compensation, the natural import of the language would be that the compensation should be the equivalent of the property. And this is made emphatic by the adjective 'just.' There can, in view of the combination of those two words, be no doubt that the compensation must be full and perfect equivalent for the property taken.

■ Since the purpose of condemnation procedures by the federal or state government is to resolve and ensure that "just" or "adequate" compensation is paid, the mutual resolution of a lawsuit for just compensation, by way of a voluntary settlement entered into by both parties, should be deemed to be nothing less than the resolution of what constitutes such "just" or "adequate" compensation. It follows, therefore, that when a condemnation procedure has been resolved by acceptance of the dollar amount offered by the condemning authority, as a result of acceptance of the initial offer, through litigation, by settlement of adversary proceedings, or some combination thereof, the taking shall be considered complete and constitutional, and the award should represent "just" or "adequate" value for the property.

■ The Texas Constitution is somewhat unique in that it also provides for a landowner to consent to a taking without being paid "adequate," or, in fact, any, consideration. Tex. Const. art. 1, § 17. Plaintiffs try to use this section of the Texas Constitution to argue that the payments accepted by Grover Hope for his property only amounted to his consent to the taking for less than full compensation, and that he did not consent at the time that the compensation he received was "adequate." Many years ago, the Texas Supreme Court offered its philosophy on consent to eminent domain takings in the case of *San Antonio*

*v. Grandjean,* 91 Tex. 430, 434, 41 S.W. 477, 479 (1897):

> The doctrine in eminent domain implies that it is to be exercised against the will of the owner. It is his want of consent that renders its exercise necessary, and hence it is not consistent with the theory of the doctrine that any conveyance from the owner or decree of court is essential to pass the title. The dissent of the owner to the taking is unavailing. His right under our constitution, except as against the state itself, is to demand that, before the property be taken, his compensation shall be paid. When he accepts as compensation a sum of money, whatever the amount, and in whatever manner arrived at, his property, to the extent of the taking, is expropriated and appropriated to the use of the public. The question of compensation out of the way, he must yield to the inevitable. The state's right is to take or accept without a conveyance, and hence, when the compensation is adjustment, no conveyance is necessary.

*Id.* at 434, 41 S.W. at 479. This doctrine has not been modified or overruled. *See Dorsett v. State,* 422 S.W.2d 828, 831 (Tex. Civ.App.1967); *State v. Jackson,* 388 S.W.2d 924 (Tex.1965). In *Hale v. Lavaca County Flood Control District,* 344 S.W.2d 245, 248 (Tex.Civ.App.1961), the Texas Court of Civil Appeals stated:

> Due process requires that the landowner be given an opportunity to establish his damages, but he is not required to do so. He may waive or disregard such right and consent to his property being taken or damaged without payment of any compensation.

The *Hale* court further found that the plaintiffs in that case, who failed to object to the findings by the special commissioners, impliedly consented to the taking of their property without payment of compensation, and could not claim that their property was taken without just compensation. *Id.* at 248. Thus, it is clear that the Texas consent provision was intended to determine whether or not, when the property was condemned, the landowner would require that he or she be paid "adequate"

compensation under the Texas Constitution, or whether the landowner wished to waive the right to receive any payment at all. This provision in the Texas Constitution, was not included to determine whether the amount of money received was enough in the mind of the landowner. This court agrees that the consent phraseology of art. 1, § 17 of the Texas Constitution should not be used to allow a landowner, unilaterally, to decide that he or she can retain partial rights in the property, even once condemnation is effected and compensation agreed to and paid, either as a result of acceptance of the value offered by the state, through litigation after trial or, as here, through voluntary participation in a settlement agreement.

■ The validity of the Texas condemnation procedures in the case currently before the court is not challenged by either party. Therefore, once Grover Hope agreed to and was paid the compensation, he retained no further rights in the property. This court finds that by agreeing to the litigation settlement and accepting the settlement dollars, Grover Hope waived his rights, constitutionally derived or otherwise, to litigate further and to establish additional value for his property. Moreover, Grover Hope now should not be allowed to claim that he consented to the settlement only because he would later claim a "bargain sale" and a charitable gift to the state.

The court notes that in paragraph 3 of the settlement agreement entered into by Grover Hope and the Texas Turnpike Authority, there are two references to the value of the condemned property. The first is:

> 3. In consideration for the settlement of the above-referenced condemnation proceeding and the conveyance of the Property and the Easement, the Authority shall pay [Grover] Hope the amount of Two Million Two Hundred Fifty–Seven Thousand Five Hundred Thirty–Three and 50/100 dollars ($2,257,533.50) which [Grover] Hope agrees to accept from the Authority as the *sufficient monetary consideration* from it for the Property and the Easement, and for any severance

damages, or any damages to or diminution in the value of, other lands belonging to [Grover] Hope, that may be claimed or asserted by virtue of the conveyance to and use of the Property and the Easement by the Authority, for interest on the amount said settlement price exceeds the amount of the Award of Commissioners herein, and for any other claim [Grover] Hope may have against the Authority, it being understood that this does not constitute an agreement that the amount being paid hereunder is the *fair market value* of the Property or the Easement or any other interests being acquired, and it being further understood that said amount is a negotiated settlement of litigation between the parties hereto. (Emphasis added).

The second reference in the settlement agreement states that the $2,257,533.50 which the landowner would receive under the agreement did not constitute the fair market value of the property, but represented a negotiated settlement of litigation. The settlement agreement, however, sheds no light on whether the settlement amount is less than or more than what the property owner believes is the fair market value. In the same paragraph, however, there is also an earlier reference that the landowner agreed to deem the monies received from the Texas Turnpike Authority "sufficient" monetary consideration." [6]

This court is of the opinion that once a condemnation has been properly completed, the landowner retains no further right in the property, including no further right to claim a tax deduction, because properly concluded condemnation proceedings presume that the landowner has received "just" or "adequate" compensation. It is noteworthy in the instant case that the settlement agreement itself seems to suggest by use of the words "sufficient monetary compensation," that Grover Hope, at the time of settlement, agreed he had been fully compensated for the value of his property. A plaintiff involved in a legitimate condemnation proceeding, who voluntary accepts an agreed to amount as compensation for the property taken, subsequently should not be allowed to, in essence, re-open the valuation portion of the condemnation proceedings, through the back door, by trying to take a charitable contribution on future, federal, income tax liability, for an amount alleged to represent the difference between the monies paid in the condemnation and an amount to be determined at a later date as the fair market value.

Moreover, the plaintiffs could not sustain their claim to a tax deduction in any event because they cannot claim that Grover Hope sold his land, or any portion thereof, to the TTA, in order later to establish a "bargain sale." Plaintiff, Grover Hope, had an opportunity, which he declined, to sell his land to the TTA before a condemnation proceeding became necessary. The TTA was compelled to exercise eminent domain power to acquire Grover Hope's land. Therefore, as explained in *Grandjean,* 91 Tex. at 434, 41 S.W. at 479, the Hopes' claim that Grover Hope voluntarily gave the excess value of his land to the TTA cannot stand in the context of the condemnation proceedings. Once the condemnation proceeding was initiated, Grover Hope lost all property rights in the land, except the right to receive "adequate" compensation, in accordance with Texas state law. The former owner of condemned property has no property right in the condemned property after the condemnation. *See, e.g., Provimi, Inc. v. United States,* 230 Ct.Cl. 621, 626, 680 F.2d 111 (1982); *see also Dorsett v. State,* 422 S.W.2d at 831.

In the case currently before the court, as required by Texas law, three, disinterested, special commissioners were appointed by the state court to assess the damages owing to Grover Hope as a result of the condemnation of his property. Tex.Prop. Code Ann. § 21.014 (1984). The commissioners assessed the damages to the Grover Hope to be $607,396.45. After that

---

**6.** In defining the word "sufficient," Websters Ninth New Collegiate Dictionary cites to the word "adequate" as a synonym. Likewise, when defining the word "adequate," the same volume cites to the word "sufficient" as a synonym. Websters Ninth New Collegiate Dictionary 56, 1179 (9th ed. 1984).

amount was deposited with the state registry by the TTA, all the property rights in the condemned land were transferred to the TTA. In accordance with Texas state law, Grover Hope did not donate land to the TTA; it was taken pursuant to constitutional, condemnation proceedings. Therefore, since no property was donated by the plaintiff, Grover Hope, there was no transfer of money or property, as required by the Supreme Court's interpretation of what constitutes a charitable gift.

As the Tax Court stated in *Stark v. Commissioner:*

> Like any purported charitable contribution, however, a sale for less than full consideration results in a deduction under section 170 only if the statutory requirements are satisfied.... In the present case, petitioner is entitled to a deduction only if she made a bargain sale 'to or for the use of' the United States 'for exclusively public purposes.' Section 170(c)(1).... Only where the taxpayer's actual motivation is to benefit the charitable organization and not himself or some other nonqualifying person is he entitled to a deduction (citations omitted). A taxpayer who negotiates for the best terms he can obtain in a commercial transaction cannot subsequently claim a deduction based upon any excess value of the 'contributed' property over the consideration received therefor.

*Stark v. Commissioner*, 86 T.C. 243, 256 (1986). "A payment of money [or transfer of property] generally cannot constitute a charitable contribution if the contributor expects a substantial benefit in return." *United States v. American Bar Endowment*, 477 U.S. 105, 116, 106 S.Ct. 2426, 2433, 91 L.Ed.2d 89 (1986); *see also Hernandez v. Commissioner*, 490 U.S. at 690,

109 S.Ct. at 2144. "Where a transaction has an 'inherently reciprocal nature' when looked at in its entirety, there is no debate that the entire value of the donor's property which was transferred may not be deducted." *Transamerica Corp. v. United States*, 902 F.2d 1540, 1544 (Fed.Cir.1990) (citing to *Hernandez*, 490 U.S. at 692, 109 S.Ct. at 2145).

Plaintiffs contend that in relinquishing Grover Hope's claim to the fair market value when he settled with the TTA, he consented to accept less than complete consideration, and that this consent constituted a gift to the state. This court rejects that argument. The purpose of providing the right to object to the commissioners findings is to allow the landowner an opportunity to present a case to prove what he or she believes is the fair market value of the condemned land. The fact that the landowner, after appealing the initial valuation decision of the state, in an arms length settlement negotiation, voluntarily settled for an amount less than what he now alleges to be the fair market value, does not establish that he failed to receive "just" or "adequate" consideration. *See Judge v. Commissioner*, 45 T.C.M. (P–H) at 1248.[7]

When the Hopes filed for additional compensation in state court, there was no guarantee that the litigation instituted by Grover Hope would result in compensation over and above the $607,396.45 originally assessed by the special commissioners. The settlement amount of $2,257,533.50 represented a negotiated amount. Thus, the transfer of title to the Texas Turnpike Authority by Grover Hope was made with the expectation of an anticipated benefit, in the form of consideration to be received by the former landowner, and cannot be considered a gift. *See DeJong*, 36 T.C. at 899.

---

7. Plaintiffs cite to *Judge* as an example of an arms-length negotiation which did not preclude a charitable donation through a "bargain sale," and in which the taxpayer was aware that the fair market value of the property was in excess of the negotiated purchase price and intended to make a gift of such excess value. However, the *Judge* case is not on point with the instant case because the negotiation in *Judge* was for the sale of the land, not for transfer of title as a result of condemnation. Once the condemnation was effected, in the case at bar, Grover Hope's ownership interests in the land ended, and the only property interest the Hopes retained as part of their bargain was a right to litigate with the State of Texas to determine a higher assessment of the fair market value of the condemned property. Moreover, once the case was resolved through a voluntary settlement, the agreed upon price represented a resolution on the issue of value.

**788**

Furthermore, as in *Stark,* Grover Hope negotiated for the best terms he could get and he is, thus, precluded from claiming a deduction based upon "excess value of the 'contributed' property over and above the consideration received therefor." *Stark v. Commissioner,* 86 T.C. 243, 256 (1986).

If one of the principal purposes of federal or state condemnation proceedings is to ensure that property owners whose land is condemned for a legitimate public purpose, receive "just" or "adequate" compensation, then, once the condemnation proceedings are complete, and especially so if the issue has been litigated or freely settled by the parties in a court of competent jurisdiction, then it is inappropriate to attribute additional value to property by way of a tax deduction on top of what has already been deemed "just" or "adequate" value. The condemnation procedures should not be forced to compete with the tax procedures for the right to determine value in a condemnation case. Nor is it administratively or judicially efficient to allow a determination of "just" or "adequate" compensation to be recomputed when a landowner seeks to relitigate in the context of a tax case. The valuation process should be considered complete once the question of "just" or "adequate" compensation has been determined as a result of proper condemnation proceedings.

### CONCLUSION

Summary Judgment is awarded to the defendant, the United States.

IT IS SO ORDERED.