CITY OF SAN ANTONIO v. MARIE O. GRANDJEAN ET AL.

No. 550.—Decided June 24, 1897; February 7, 1898.

**1.  Eminent Domain—Right to Take—Conveyance Unnecessary.**

The State's eminent domain is a right to take the property, subject by our law to the condition that compensation be first made, and does not involve the necessity of a grant or conveyance by the owner, or of any judicial decree. (Pp. 432 to 434.)

**2.  Same—Conveyance Unnecessary.**

Since the State has the inherent and paramount right to the property when needed for public purposes, the determination by the proper authority that the necessity for the taking exists, and the taking, and the adjustment with the owner of the question of compensation, however effected, complete the appropriation and devote the property to public use. (P. 434.)

**3.  Same—Right of Owner.**

The right of the owner is to demand that before the property be taken his compensation shall be paid. When he accepts as compensation a sum of money, whatever the amount and in whatever manner arrived at, his property to the extent of the taking is expropriated and appropriated to the use of the public. (P. 434.)

**4.  Married Woman—Acceptance of Compensation.**

The separate property of a married woman is under our law hers in her own right, with power of alienation, with consent of the husband, except where restrained by the statute (Rev. Stats., art. 635) requiring privy examination and acknowledgment for conveyance of her real estate,—which statute does not apply to the exercise of eminent domain since a conveyance is not essential thereto. Her acceptance of compensation tendered her, though the condemnation was upon proceedings against the husband alone was an election by which she was bound. (P. 435.)

**5.  Same—Fact Case.**

The City of San Antonio by proceedings against G. only, condemned for a street land which was the separate property of his wife, and, tender of the damages assessed being declined, paid the amount into a bank to the credit of G. and his wife.  Subsequently G. drew out half the money, and later his wife drew out and appropriated the other half.   In a suit by her, after divorce from her husband, to recover the land, held that she was bound by her acceptance of the half of the damages assessed, and could not recover. (Pp. 431 to 437.)

ERROR to the Court of Civil Appeals for the Fourth District, in an appeal from Bexar County.

Marie O. Grandjean sued the City of San Antonio in trespass to try title.   Defendant had judgment and plaintiff appealed to the Court of

Civil Appeals, where the judgment was reversed and rendered for appellant. The City of San Antonio then obtained writ of error:

*R. B. Minor*, for plaintiff in error.

*Leo Tarleton, Nat B. Jones* and *Geo. C. Altgelt*, for defendant in error.—Appellant not having been made a party to the condemnation proceedings, nor being impleaded therein, is not estopped by the proceedings and judgment of condemnation against Ulysses Grandjean. Aggs v. Shackelford County, 85 Texas, 145; Odell v. Railway, 4 Texas Civ. App., 607; Parker v. Railway, 84 Texas, 333; Lewis, Eminent Domain, 322.

The trial court erred in holding plaintiff was estopped from asserting her right to the personal and real property sued for, because the whole proof established without contradiction that the condemnation proceedings against Ulysses Grandjean alone had been conducted to a final judgment, and the amount awarded by said judgment to said Ulysses Grandjean had been deposited with the city treasurer of defendant for payment of said judgment under condemnation proceedings; and it is wholly immaterial whether plaintiff received the whole or any part of the award made to and paid under said judgment in favor of her then husband by defendant. It can make no difference whether such payment to or for the benefit of her husband became his separate property, or became the community property of plaintiff and her husband. She had the right to receive with his consent the whole or any part. McLaren v. Jones, 33 S. W. Rep., 849; Bynum v. Preston, 69 Texas, 287; Railway v. Flato, 35 S. W. Rep., 859.

GAINES, CHIEF JUSTICE.—This was an action of trespass to try title, brought by Marie O. Grandjean against the City of San Antonio, to recover a parcel of real estate lying in said city and claimed by the city as a part of a street.

The city pleaded not guilty, and specially, that at one time the property belonged to the community estate of the plaintiff and Ulysses Grandjean, her husband, and that in a regular proceeding instituted against the husband for the purpose, the property had been condemned as a street and the damages assessed and paid. It also pleaded that after the attempted condemnation and assessment, the plaintiff, with a knowledge of the facts, had received one-half of the sum assessed, Ulysses Grandjean having received the other half. The defendant also made Ulysses Grandjean a party, and among other things prayed for, asked that, in the event the plaintiff should recover, it should have a judgment against him for the money paid him upon the assessment.

The case was tried without a jury, and the court gave judgment for the defendant, without filing conclusions of fact and law. Upon appeal, the Court of Civil Appeals reversed the judgment of the trial court and

rendered judgment for the plaintiff for the property and for damages and rents, and that the city take nothing by its cross-action.

The Court of Civil Appeals found as a fact that, at the time of the attempted condemnation, the parcel of land in controversy was the separate property of the plaintiff,—whether correctly or not, in the view we take of the case, it is not necessary to determine. It was admitted that the proceedings for the condemnation of the property as a street, as against Ulysses Grandjean, were regular. The value of the property was assessed upon the condemnation, at $35,000. The treasurer of the city went to the husband, and, in the presence of the wife, tendered the money in payment of the property, but the husband, protesting against the taking of the property, declined to receive the compensation. The wife also declined. There was a conflict in the testimony as to what occurred at the interview, which it is not necessary to discuss in this connection. The report of the commissioners appointed to assess the property was made November 22, 1889. After the tender of the money had been declined, it was placed in bank to the credit of Ulysses Grandjean and Marie O. Grandjean. On the 17th day of December, 1889, Ulysses Grandjean accepted one-half of the sum and gave his receipt therefor. On January 4, 1890, the plaintiff drew her check for the other half and had it placed to her own credit in the bank; and subsequently, during the same year, drew it out in varying sums and appropriated it to her own use. In May, 1894, she and her husband were divorced; and in March, 1895, she brought this suit for the recovery of the property. The question is, can she, under these circumstances, reclaim the property?

If the rights of the parties were to be determined upon the principles governing ordinary conveyances of real estate, the separate property of a married woman, the point would not be difficult to resolve. The rule in this State, as in many other jurisdictions, is that the title of a feme covert to her real estate will neither pass nor be affected by her attempted conveyance, except by a deed duly acknowledged by her upon privy examination and duly certified. Neither a deed not duly acknowledged, nor the reception and appropriation by her of the consideration, nor her subsequent acts showing her acquiescence, nor all these together will estop her from asserting her title. A contrary rule would enable that to be done indirectly, which the statute declares shall be done only by a certain method, and would defeat the purpose of the law. But, does the transaction in question stand upon the footing of an ordinary conveyance? The City of San Antonio does not occupy the position of a private person who has contracted for the purchase of the land of a married woman, and who has paid her the consideration and taken possession of the property. Its attempt was to exercise the power conferred upon it by the State to take the property for the purpose of a street. The right to take private property for public use is necessary to government and inheres in every sovereignty. Whatever may be the theory as to the foundation of the right of eminent domain,

everyone holds his property subject to that right.   Enlightened govern-
ments provide always for compensation to the owner, and in our State,
as in many others, the payment of the compensation is made a condi-
tion precedent to the taking.   But, at last, it is essentially a right to
take, and does not involve the necessity of any grant or conveyance on
part of the owner, or of any judicial decree.   Thompson v. Railway
Co., 110 Mo., 161.   Statutes for the condemnation of private property
to a public use, may provide for compulsory conveyance by the owner
or for passing the title by the decree of the tribunal authorized to assess
the damages.   Such conveyance or decree affords more permanent and
satisfactory evidence of the expropriation, but the expropriation is com-
plete without it.   For example, when a city to which the power of taking
property for a public use has been delegated by the State, through its
council, ordains that certain property be taken for a street, and when
the compensation has been assessed according to law or has been agreed
upon between the authorities of the city and the owner, and has been
paid by the former to the latter, the easement is established, and the
title of the owner to that extent extinguished.

A private easement, as for a private right of way, even at common
law, could only be conveyed by grant; and besides, being an interest in
land, it is within the statute of frauds and must be conveyed in writing.
Not so with a public way.   The owner of land may dedicate a way over
it for the use of the public.   No writing is necessary to effect this re-
sult.   When the owner by words or acts has clearly evinced an imme-
diate intention to devote the way permanently to the use of the public,
and the offer of dedication has been accepted, however informally, the
dedication is complete, and he cannot revoke it.   In such a case, it
seems to us that there is no conveyance in the proper sense of the word;
there is no express grantee, and we think it a fiction to assume, as is
assumed by some authorities, that the city, county or quasi-corporation
which may be by law entrusted with the control of the way or other
easement is the grantee.   It is generally said that the dedication oper-
ates by way of estoppel.   In many cases the law of estoppel applies
without doubt.   A grantor, by conveying to his grantee a lot in a town
or city, and in the description calling for a street upon which it is
asserted to abut, may estop himself to deny, as against his grantee, that
such a street exists, although the town or city may never accept it as
such.   On the other hand, we understand the law to be, that when a
dedication is offered and accepted, it is complete, even before any act
is done by the representative of the public which changes the position
for the worse.   If work be done upon the way or other easement, there
is ground for holding the owner concluded.   But it is hard to see how
the use by the public of a road which has been tendered for such use,
but upon which no labor has been expended, operates to the detriment
of the public, and hence it is difficult to find in the facts any element of
estoppel.   Yet we understand the authorities to agree, that if the tender
be unequivocal and the easement be used by the public, even without

formal acceptance by the proper authority, the dedication becomes irrevocable. In Oswald v. Grenet, 22 Texas, 99, the court say: "Respecting what will amount to or may be received as evidence of a dedication, the law is too well settled to admit of controversy. A setting apart or dedication to a public use, to be effectual, need not be by deed; nor need it be evidenced by the use of it having been continued for any particular time; it is enough that there has been some clear, unequivocal act, or declaration of the proprietor, evidencing an intention to set it apart for a public use, and that others have acted in reference to and upon the faith of such manifestation of intention. If the act of dedication be unequivocal, it may take place immediately." All these propositions were not involved in that case, but they are too well established to require a citation of authority here to support them.

In cases in which there has been an attempt to condemn, but the proceedings are invalid for want of a compliance with the statute which authorized the condemnation, it is held that the owner, by accepting the condemnation assessed, makes the transaction effectual. Hartshorn v. Potroff, 89 Ill., 509. It follows that the grounds upon which the doctrine of dedication is ordinarily based, are unsatisfactory. In our opinion, the true principle is, that since the State has the inherent and paramount right to the property, when needed for public purposes, the determination by the proper authority that the necessity for the taking exists, the taking, and the adjustment with the owner of the question of compensation, however affected, completes the appropriation and devotes the property to the public use. The conditional paramount title of the government becomes absolute when the compensation is assessed or agreed upon and paid, or when its payment is waived. The doctrine of eminent domain implies that it is to be exercised against the will of the owner. It is his want of consent that renders its exercise necessary, and hence it is not consistent with the theory of the doctrine, that any conveyance from the owner or decree of court is essential to pass the title. The dissent of the owner to the taking is unavailing. His right under our Constitution, except as against the State itself, is to demand that before the property be taken, his compensation shall be paid. When he accepts as compensation a sum of money, whatever the amount and in whatever manner arrived at, his property, to the extent of the taking, is expropriated and appropriated to the use of the public. The question of compensation out of the way, he must yield to the inevitable. The State's right is to take or accept without a conveyance, and hence, when the compensation is adjusted, no conveyance is necessary.

The fundamental principle we have announced as applicable to this question is involved in those decisions which hold that where a railroad company, without either the consent of the owner or the condemnation of the property, has constructed its track over land of another, and subsequently seeks to condemn it, the owner is not entitled to compensation for the structures placed thereon by the company. Preston v. Railroad Co.,

70 Texas, 375, and cases cited. Ordinarily, whatever a trespasser annexes to the land of another becomes the property of the owner of the land; and hence the case of a railroad can only be distinguished upon the ground that the company had the original right to take the easement, and that the owner was merely entitled to the compensation, with the power to hold his property until the compensation should be properly assessed and paid.

Let us apply these principles to the present case. If Mrs. Grandjean had been sui juris when she drew the $17,500 out of the bank, it is clear that she could not reclaim the property. Does the fact of her cover-ture make a difference? Under our law, a married woman's separate property is hers in her own right. This right, except where restrained by statute, carries with it the power of alienation. Under the first sec-tion of the Act of April 30, 1846 (Pas. Dig., art. 1003), which applied to "the land, slaves and other effects, the separate property of the wife," it was held that the wife, with the consent of her husband, might make a sale of her personal property without formality, provided the contract was not made in writing. Ballard v. Carmichael, 83 Texas, 355. Our present statute upon the subject applies to her real estate only. Rev. Stats., art. 635. Under that article, it was held by the former Court of Appeals, correctly as we think, that she could convey her personal property without privy examination and acknowledgment. By the word "conveyance," as used in the article last cited, is meant an instrument which purports to transfer the title of the wife to some other person natural or artificial, and since, as we have seen, a conveyance is not essential to the exercise of the right of eminent domain,—that the taking is a mere enforcement of the paramount title of the sovereignty for the public necessities, and a corresponding extinguishment of the title of the owner,—we are of opinion, that the statute does not apply. It is a case in which the power of the wife is unrestrained, save that the consent of her husband to the act may be required. In this case, the city council had declared that the property should be condemned for use as a street, and had caused the damages to be assessed. Mrs. Grand-jean was not made a party to the proceedings, and was not bound by the assessment. But she had the election to take what was tendered her, or to decline it and take her chances upon a new assessment. She accepted one-half, the other half having been paid to her husband; and we think that she is bound by her election. Ardesoife v. Bennett, 2 Dick., 463; Willoughby v. Middleton, 2 John. & H., 344; Sisson v. Giles, 11 Week. Rep., 558; Anderson v. Abbott, 23 Beav., 457. When the council had declared that the property should be condemned she had the right to her compensation, and she was, as we think, not disabled, with the consent of her husband, to waive the invalidity of the proceedings taken to assess the compensation and to accept the whole or one-half in full satisfaction. Their consent and election is evidenced by their ac-ceptance of the money and neither can now disaffirm their action.

As to the question whether or not a married woman may dedicate

her land to a public use, the authorities are not quite clear. Judge
Elliott, the author of the work on Roads and Streets, and formerly an
Associate Justice of the Supreme Court of Indiana, says that the decis-
ions of that State leave the matter in doubt. Elliott on Roads and
Streets, 102. Some of the cases from that court seem to hold, that, as
a general rule, a married woman cannot be estopped to claim her real
estate in the absence of an intentional fraud, but in the case of the City
of Indianapolis v. Kingsbury, 101 Ind., 200, a distinction is drawn,
properly as we think, between an ordinary conveyance by a married
woman and a dedication by her, and it is decided, as we understand it,
that she may make a dedication without a deed privily acknowledged
and certified. In Schenley v. The Commonwealth, 36 Pa. St., 29, it is
held that a married woman may make a dedication. In that case it
appears that the land had been dedicated for use as a street by a tenant
for the term of twenty-one years. The reversioner was a woman, and
was covert at the expiration of the lease. Its use as a street was con-
tinued without objection on her part for four years and a half after the
term expired. In their opinion, the court say:

"That a tenant for years cannot bind his reversioner, by a dedication
to public use, must be admitted, but it is not to be maintained that a
married woman may not dedicate her land for a public highway. Join-
ing with her husband she may convey, and, therefore, a dedication,
which is but a limited conveyance, may be presumed against her and
her husband. Nor is it necessary to a dedication that there has been
twenty-one years of adverse enjoyment, though it is to the presumption
of a grant, when time alone is relied upon to raise it. Whenever there
is an actual giving of land for a public highway, accepted by the public,
though there be no deed, the dedication is complete. The period of
twenty-one years of enjoyment, after which a presumption of a grant is
made, is fixed from analogy to the statute of limitations; and for the
same reason for which it is not permitted to add coverture to infancy,
in order to avoid the running of the statute, must the fact of Mrs.
Schenley's coverture after the expiration of Garrard's lease be of no
consequence. The facts of the case, as proved and assumed by the de-
fendants, are, that the street was opened in 1830, and devoted to use as
a public highway. Grant that the dedication did not then bind Mrs.
Schenley. The street continued open and in constant use until 1851,
when the tenant's term expired. Then, instead of disavowing what he
had done, instead of closing the street, and resuming her rights as the
reversioner, she permitted the street to remain open and used by the
public, four or five years longer, until after the grading and paving had
been done, until after the costs and expenses had been incurred, and
never, until the trial of this cause, has she pretended that it was not a
permanent street. Under these circumstances, we cannot doubt, that
the jury should have presumed a valid dedication, and that the court
was right in so instructing them."

In New York, they have a statute which attempted to authorize the

City of New York, in cases in which by the opening of streets fractions of lots were left, to condemn such fractions. The courts held that the statute, if intended to authorize a compulsory taking of such parcels, was unconstitutional; but that the Legislature had the power to authorize the taking by the city, with the owner's consent; and the latter construction was put upon the act. Under that construction it was held, that a married woman had the power to consent to the taking, and that no deed was necessary in such a case to operate a transfer of her property. Embury v. Conner, 3 N. Y., 511.

If the owner may dedicate his property for a public use by parol without compensation, he may certainly so dedicate it for a consideration paid at the time of the transaction. Rees v. The City of Chicago, 38 Ill., 322.

We conclude, that since Mrs. Grandjean elected to take one-half of the sum at which the property had been assessed, which half had been tendered to her by the city, in satisfaction of her right, she cannot now reclaim the property, and that therefore, the judgment of the Court of Civil Appeals ought to be reversed, and that of the District Court ought to be affirmed, and it is ordered accordingly.

> *Judgment of Court of Civil Appeals reversed.*
> *Judgment of District Court affirmed.*

Opinion delivered June 24, 1897.

DENMAN, Associate Justice, did not sit in this case.

Counsel for defendant in error filed a motion for rehearing, supported by brief and argument, upon which the written opinion following was rendered.

### ON MOTION FOR REHEARING.

GAINES, CHIEF JUSTICE.—The defendant in error in her motion for a rehearing complains of inaccuracies in the statement of the case made in the opinion of this court, which we deem it proper to correct. The statement complained of is as follows: "On the 17th day of December, 1889, Ulysses Grandjean accepted one-half of the sum and gave his receipt therefor. On January 4, 1890, the plaintiff drew her check for the other half and had it placed to her own credit in the bank and subsequently during the same year drew it out and in various sums and appropriated it to her own use." The statement of the Court of Civil Appeals, from which the above was extracted, is as follows: "Early in the morning of December 3, 1889, the Street Commissioner of the city of San Antonio, acting for and in behalf of the city, tore down and removed the buildings, and the premises were appropriated by the city to its use as a part of St. Mary's street, and have been used by the city exclusively for that purpose continually ever since. The City Treasurer, upon the

instruction of the City Attorney, placed the money ($35,000) in the bank to the credit of both parties. This deposit seems to have been made on December 31, 1889, although the following receipt was given for the money, viz: 'San Antonio, Dec. 17, 1889. Received of Ferdinand Herff, City Treasurer of the City of San Antonio, the sum of thirty-five thousand dollars, being the amount deposited to my credit by the said City of San Antonio for the damages allowed me for the condemnation of my property, situated on the northeast corner of Commerce St. and St. Mary's St., and taken for the purpose of widening said St. Mary's Street; said amount being in full of all my claim therefor. (Signed) Ulysses Grandjean.' Appellant was not present when the receipt was given, nor when the deposit was made. The treasurer of the city was not induced to do anything, nor was he in any way misled by what appellant at any time said or did. On January 4, 1890, after the receipt was executed, and the money deposited in the bank, the appellant went to the bank, and complained to Mr. Herff, the city treasurer, stating that her husband would squander the money, and she wanted to get her half of it. Upon being informed by Herff that she could draw it if she wanted it, she thereupon drew her check on the bank for $17,500, which was honored by the bank, and the sum of money for which the check was drawn was, by the bank, placed to her individual credit. She afterwards, by a number of checks, drew all this money out; the last check upon it being dated August 1, 1891. The balance of the money was drawn from the bank by appellant's husband."

The case was tried without a jury and the court gave judgment for the defendant without stating the conclusions of law and fact upon which the judgment was based. Under a well-established rule the trial judge must be deemed to have found every fact necessary to support the judgment which there was evidence to establish. The Court of Civil Appeals reversed the judgment and rendered judgment for the appellant —basing their conclusion on the broad proposition, that without a legal condemnation, or a legal conveyance joined in by the husband and duly acknowledged by the wife, the title of the appellant was not divested. If they had reversed the judgment upon any matter of fact upon which the evidence was conflicting the cause should have been remanded for a new trial.

The documentary evidence shows, that the money was drawn from the city treasury to pay Ulysses Grandjean and Marie O. Grandjean; that on the 3rd of December, 1889, it was deposited in bank payable to the order of "Marie Grandjean and Ulysses Grandjean." This is shown by the certificate, issued on that day by the assistant teller of the bank, of a deposit made by the City Treasurer. This certificate was endorsed "credit account of Marie Grandjean or Ulysses Grandjean." But it appears from the books of the bank, that the credit was not entered on the books of the bank until December 31, 1889. This indicates, we think, that the funds were held by the bank as a special deposit, until the parties for whose benefit it was made had agreed to accept the

money.   The receipt of Ulysses Grandjean of December 17, in connection with other evidence, shows that it was not for money then paid, and there was no evidence of any change of credit on the books of the bank on that date.   On December 31, 1889, the deposit was entered to the credit of "Ulysses or Marie O. Grandjean," and on the 4th of January next thereafter one-half was drawn out by the husband, and on the same day the wife drew a check for the other half and the same was placed to her credit on the books of the bank.   She subsequently drew out the amount at different times; and whether this was within one year or two years after the deposit was made to be her seperate credit, is wholly immaterial.

Having made the desired correction with the foregoing additional statement, we have only to add that the difference between the facts as found by the Court of Civil Appeals and the facts as stated by this court should, in our opinion, make no difference in the result of the case.   The motion for a rehearing is overruled.

*Motion overruled.*

Opinion delivered February 7, 1898.

DENMAN, Associate Justice, did not sit.