IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-09-00039-CV

 

City of Midlothian,
 Texas,

                                                                                    Appellant

 v.

 

ECOM Real Estate Management, Inc.,

                                                                                    Appellee

 

 

 



From the 40th District
Court

Ellis County, Texas

Trial Court No. 68846

 



MEMORANDUM  Opinion



 








            The City of Midlothian, in the course of expanding its wastewater operations, approached ECOM Real
Estate Management, Inc. about obtaining an easement on ECOM’s property.  The
parties entered an easement agreement for construction of a sewer system.  The
City agreed to construct five stubout connections, which allow ECOM to access
the sewer system, and agreed that ECOM could provide its own water.  After the City
installed the sewer system and stubouts, the city council passed an ordinance
requiring parties to purchase water from the City in order to use the sewer
systems.  The City denied ECOM’s application for an exemption.  ECOM sued the
City, alleging breach of contract, fraud, and fraudulent inducement and seeking
a declaratory judgment, attorney’s fees, and exemplary damages.[1] 
The trial court denied the City’s partial plea to the jurisdiction.  In five
issues, the City challenges the denial of its plea.  We reverse and render.

STANDARD OF REVIEW

A plea to the jurisdiction challenges the trial
court’s “power to determine the subject matter of the suit.”  Vela v. Waco Indep. Sch. Dist.,
69 S.W.3d 695, 698 (Tex. App.—Waco 2002, pet. withdrawn).  We review a plea “based on
sovereign immunity de novo
because the question of whether a court has subject matter jurisdiction is
a matter of law.”  Hoff
v. Nueces County,
153 S.W.3d 45, 48 (Tex. 2004); see Vela, 69 S.W.3d at 698.  Where “the pleading
requirement has been met and evidence has been submitted to support
the plea that implicates the merits of the case, we take as true all
evidence favorable to the nonmovant.”  Tex. Dep’t of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 228
(Tex. 2004) (citing Sci.
Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997)).  “We indulge every
reasonable inference and resolve any doubts in the nonmovant’s favor.”  Id.

BREACH OF CONTRACT

            In issue one, the City
argues that the trial court lacks subject matter jurisdiction over ECOM’s
breach of contract claim.

ECOM does not contend that the
Legislature has waived immunity from suit for the breach of contract action
alleged in this case.  See Tex. Local Gov. Code Ann. §§ 271.151-.152 (Vernon 2005); see also City of San Antonio v. Reed S. Lehman
Grain, Ltd., No. 04-04-00930-CV, 2007 Tex. App. LEXIS 7515, at *6-7 n.2
(Tex. App.—San Antonio Mar. 14, 2007, pet. denied) (mem. op.).  Rather, ECOM argues that it may pursue its
breach of contract claim under Texas A&M University-Kingsville v. Lawson,
87 S.W.3d 518 (Tex. 2002), (plurality op.) and City of Carrollton v.
Singer, 232 S.W.3d 790 (Tex. App.—Fort Worth 2007, pet. denied).

In Lawson, the trial court granted the University’s
plea to the jurisdiction as to all but Lawson’s whistleblower and
constitutional claims, which the parties settled.  See Lawson, 87 S.W.3d at 518-19. 
Lawson later sued the University for breach of the settlement agreement.  Id.
at 519.  The trial court denied the University’s plea to the jurisdiction.  Id.  Noting that the Legislature has waived immunity for whistleblower claims, the
Texas Supreme Court held:

[W]hen a governmental entity is exposed
to suit because of a waiver of immunity, it cannot nullify that waiver by
settling the claim with an agreement on which it cannot be sued.  The
government cannot recover waived immunity by settling without defeating the
purpose of the waiver in the first place.  Such a rule would limit settlement
agreements with the government to those fully performed before dismissal of the
lawsuit because any executory provision could not thereafter be enforced.  

 

Id. at 521.[2] 


In Singer, the City notified the
Singers that it needed to
acquire a portion of their property to extend a road.  See Singer, 232 S.W.3d at 792-93.  The Singers agreed to convey a right of way to the City in
exchange for the City’s agreement to perform certain promises.  Id.  The
Singers later sued the City for breach of the agreement.  Id. at 794.  The
trial court denied the City’s plea to the jurisdiction.  Id.  On appeal,
the Singers argued that the “City is not immune from suit in this instance
because the agreement between the parties was, in essence, a settlement of an
eminent domain claim, for which the City has no immunity by virtue of the Texas
Constitution.”  Id. at 795. 

The Fort Worth Court agreed with the
Singers.  According to the Court, “An agreement to convey property to a
governmental authority for a public purpose has the same effect as a formal
condemnation proceeding.”  Id. at 798.

[E]ven though the City had not yet
instituted condemnation proceedings against the Singers in court, it intentionally
acquired the Singers’ land for the public purpose of extending a road, for
which a municipality is statutorily authorized to institute condemnation
proceedings…and it had performed a condition precedent to instituting eminent
domain proceedings in court--negotiating with the Singers for adequate
compensation.

 

Id. at 799.  “[I]f the Singers had not
reached a settlement agreement with the City, the City would have had to
institute eminent domain proceedings against them to acquire the land.”  Id.  The City “exposed itself to liability and suit by its threat of eminent
domain proceedings.”  Id. at 800 (emphasis added).

[T]he City could not create immunity
from suit for the Singers’ claim for adequate compensation by contracting to
purchase their property at an agreed upon valuation in fulfillment of the
condition precedent to filing an eminent domain proceeding in court as set
forth in the property code.  

 

Id. (internal citations omitted).  The Fort Worth Court held
that the City was not immune from suit because the agreement was a “settlement
of an eminent domain proceeding in which the Singers would have a claim against
the City for adequate compensation for the City’s acquisition of their
property, and for which the City would not be immune.”  Id.

            Here, the City admits that it
cannot prevail under Singer.  However, relying on Chief Justice Cayce’s
dissent, the City argues that Singer was wrongly decided.

In his dissent, Chief Justice Cayce noted
that the majority’s holding conflicted with the rule that a governmental entity
“does not, merely by entering into a contract, waive immunity from suit.”  Id. at 801 (Cayce, C.J., dissenting).  He
emphasized that, unlike Lawson, the “City was not exposed to suit
because of a waiver of immunity when it entered into its agreement with the
Singers.”  Id.  At the time of the agreement, the Singers had “no
cognizable claim under Texas law that could be brought against the City based
on their negotiations with the City, and they had not filed or threatened to
file a suit alleging a claim against the City for which the City’s immunity is
waived.”  Id.  

He voiced several concerns with the
majority’s conclusion that the “City exposed itself to suit by ‘its threat
of eminent domain proceedings,’ and that the parties’ agreement settled an
eminent domain claim in which ‘the Singers would have a claim against
the City for adequate compensation.’”  Id. at 802.  First, the “alleged
‘threat’ of eminent domain proceedings did not expose the City to a suit for
adequate compensation because the Singers could not have sued the City based on
such a threat.”  Id.  The Singers would not have an “actionable claim
against the City for adequate compensation” unless the City “actually commenced
eminent domain proceedings to take the property--which the City did not do.”  Id.  Second, the agreement “evidences an intent that the Singers convey their
property to the City in consideration for the City’s promise[s],” not an intent
to “settle an alleged eminent domain or adequate compensation claim.”  Id.  Third, the Singers had “no adequate compensation claim to settle when they
entered into the agreement because they had already reached an agreement with
the City on the amount of compensation:”

Before initiating an eminent domain
proceeding, a municipality must first attempt to purchase the property by
agreement.  When the municipality purchases the property by agreement, there is
no condemnation or “taking” of the property by the power of eminent domain.  In
such a case, the person from whom the property was purchased has no justiciable
claim for adequate compensation under the condemnation statutes or the takings clause.

 

Id.

Finally, Chief Justice Cayce warned that
“characterizing the agreement as settling an eminent domain claim” ignores the
“distinction between a municipality’s power to purchase property by contract
and to take property by eminent domain.”  Id. at 803.

The evidence conclusively shows that the
City was acting within a color of right under contract when it negotiated the
agreement with the Singers to purchase their property and not under its
eminent domain powers.  The Singers were not forced to negotiate with the City.
 They could have refused to negotiate, insisted that the City take the
property, if at all, by eminent domain, and asserted a claim for adequate
compensation.  Having agreed to convey their property to the City voluntarily,
however, the Singers should not be allowed to now assert that the City has
taken or attempted to take their property against their will by eminent domain.


 

Id.

 

To support the holding in Singer,
ECOM cites San Antonio
v. Grandjean, 91 Tex. 430, 41 S.W. 477 (1897), State v. Brewer, 141 Tex. 1, 169 S.W.2d
468 (1943), Howard
v. County of Nolan, 319
S.W.2d 947 (Tex. Civ. App.—Eastland 1959, no writ), and Weingarten
Realty Investors v. Albertson’s, Inc., 66 F. Supp. 2d 825 (S.D. Tex 1999). 
ECOM argues these cases clarify that a “conveyance in lieu of condemnation is
the equivalent of a condemnation.”

In Grandjean, the city council declared that the Grandjeans’
property should be condemned and the City condemned the property, naming only
Ulysses Grandjean in the
petition.  See Grandjean,
41 S.W. at 477, 480.  Marie Grandjean accepted one half of the proceeds, but later
sued to recover the property.  Id. at 477-78.  The Texas Supreme Court held
that Marie could not recover the property.  Id. at 480.  The Court
noted that eminent domain is “essentially a right to take, and does not involve
the necessity of any grant or conveyance on part of the owner, or of any
judicial decree.”  Id. at 478.

[S]ince the State has the inherent and
paramount right to the property, when needed for public purposes, the
determination by the proper authority that the necessity for the taking exists,
the taking, and the adjustment with the owner of the question of compensation,
however affected, completes the appropriation and devotes the property to the
public use.  The conditional paramount title of the government becomes absolute
when the compensation is assessed or agreed upon and paid, or when its payment
is waived.  The doctrine of eminent domain implies that it is to be exercised
against the will of the owner.  It is his want of consent that renders its
exercise necessary, and hence it is not consistent with the theory of the
doctrine, that any conveyance from the owner or decree of court is essential to
pass the title.  The dissent of the owner to the taking is unavailing.  His
right under our Constitution, except as against the State itself, is to demand
that before the property be taken, his compensation shall be paid.  When
he accepts as compensation a sum of money, whatever the amount and in whatever
manner arrived at, his property, to the extent of the taking, is expropriated
and appropriated to the use of the public.  The question of compensation out of
the way, he must yield to the inevitable.  The State’s right is to take or
accept without a conveyance, and hence, when the compensation is adjusted, no
conveyance is necessary.

 

Id. at 479; Dorsett v. State, 422 S.W.2d 828, 831 (Tex. Civ. App.—Waco
1967, writ ref’d n.r.e.).

            In Brewer, the Brewers conveyed land to the State for
construction of a highway and later sued for damage to their remaining property. 
See Brewer, 169 S.W.2d
at 469, 471.  The Texas Supreme Court explained that:

The conveyance of land for a public
purpose will ordinarily vest in the grantee the same rights as though the land
had been acquired by condemnation.  The conveyance will be held to be a release
of all damages which would be presumed to be included in the award of damages
if the property had been condemned.

 

Id. at 471 (quoting 2 John Lewis, A Treatise on the Law of Eminent
Domain in the United States § 474 (3d ed. 1909)).  The Brewers could not
recover for damage to their property.  See id. at 472-73.

In Howard, the Howards conveyed
land to the State
and Nolan County for “highway purposes” and later sued to set aside the deed.  Howard, 319 S.W.2d at 948.     

The power to acquire property for public
use is inherent in the State without regard to consent of the owner, when
adequate consideration is paid.  However, when an owner consents to the taking
and use of his property, such consent is a defense to an action to recover its
possession.  It is also held that whenever the owner accepts a sum of
money as compensation for land for such a use, his property, to the extent of
the taking, is expropriated to the use of the public.  

 

Id. at 950 (internal citations omitted).  The
Howards could not set aside the deed, but were “limited to an action for
damages for additional servitude on their land.”  Id.

          In Weingarten, Albertson’s leased a space from
Weingarten.  See
Weingarten, 66 F. Supp. 2d at 834.  The lease contained a provision
regarding eminent domain.  Id. at 835.  TxDOT later sent correspondence entitled “Proposed
Condemnation Proceedings.”  Id. 
Weingarten conveyed the property to TxDOT.  Id.  The deed provided that the consideration
“represents a settlement and compromise by all parties as to the value of the
property…in order to avoid formal eminent domain proceedings...”  Id. at 843.  Albertson’s terminated
the lease and later sued for breach of contract to recover a portion of the
proceeds.  See id. at 836-37.  The Court noted that the “institution of formal condemnation
proceedings was not required because Weingarten agreed to convey the property
to TxDOT.”  Id. at 843.

An agreement to convey property to a
governmental authority has the same effect as a formal condemnation proceeding. 
“The conveyance of land for a public purpose will ordinarily vest in the
grantee the same rights as though the land had been acquired by condemnation
proceedings.”  Indeed, “whenever the owner accepts a sum of money as
compensation for land for such a use, his property, to the extent of the
taking, is expropriated to the use of the public.”

 

Id. at 843 (internal citations omitted). 
The Court rejected Weingarten’s argument that no taking occurred.  See id.
at 843-45.

These cases recognize that both a
voluntary conveyance of property by a landowner to a governmental entity and a
taking by eminent domain have the same result.  See Grandjean, 41 S.W. at 479; see also Brewer, 169 S.W.2d at 471; Howard, 319 S.W.2d at 950; Weingarten, 66 F. Supp. 2d at
843.  As
Chief Justice Cayce notes, there exists a distinction between a governmental
entity’s right to purchase property versus its right to take property.  See
Osborne v. Keith, 142 Tex. 262, 177 S.W.2d 198, 201 (1944); see also Weingarten, 66 F. Supp. 2d at
842 (“Generally, in Texas,
‘the government compensates the owner before appropriating property, either by
paying a mutually agreed price or by paying the value as determined in a
statutory condemnation proceeding.’”); Tex. Prop. Code
Ann. § 21.012 (Vernon Supp. 2008); Tex. Local Gov. Code Ann. § 273.001 (Vernon 2005).  Under either method, the entity has
the same rights to the property.  See Grandjean,
41 S.W. at 479; see also
Brewer, 169 S.W.2d
at 471; Weingarten, 66 F. Supp. 2d at 843.  Despite having the same result,
the difference between the two methods of acquisition is that eminent domain is
“exercised against the will of the owner,” while a purchase involves the
owner’s voluntary consent.  Grandjean, 41 S.W. at 479.  If the owner consents to a
purchase, the process of eminent domain is unnecessary.  See id.  We agree with Chief Justice Cayce’s conclusion that Singer
ignores this important distinction.

Additionally, Singer ignores the
fact that Lawson involved a pending lawsuit.  The San Antonio Court recently declined to
apply Lawson absent pending litigation:

Unlike Lawson, Gracia did
not have a statutorily recognized claim pending in the trial court when he
entered into an agreement with the District.  The settlement agreement in this
case was executed just as Gracia was instituting the administrative process
that the State created for challenging the termination of teaching contracts.  In
short, Gracia settled a claim that, at that point in time, had no adjudicative
value in our court system.

 

Donna Indep. Sch. Dist. v. Gracia, 286 S.W.3d 392, 395 (Tex. App.—Corpus
Christi 2008, no pet.).[3] 
In Porretto v. Patterson, 251 S.W.3d 701 (Tex. App.—Houston [1st Dist.] 2007, no pet.), the First Court cited Lawson as follows:

[A] governmental entity that agrees to settle
a lawsuit from which it is not immune cannot claim immunity from
suit for breach of the settlement agreement relating to that claim.  The
policy supporting this holding is that the government should not regain
immunity it previously has waived by settling a case. 

 

Porretto, 251 S.W.3d at 712 (“Because the GLO is not immune from
the Porrettos’ takings claim, under Lawson, the
Porrettos’ breach of contract claim can proceed, but only to the extent it
arises out of the takings claim.”) (emphasis added) (internal citations
omitted).  We agree with this interpretation of Lawson.

In doing so, we note that this case does
not involve a situation where the City was exposed to suit.  See Singer, 232 S.W.3d
at 802-03 (Cayce, C.J., dissenting).  When the parties entered the easement
agreement, no eminent domain proceeding was pending because no petition had
been filed in the proper court.  See Tex. Prop. Code Ann. § 21.012(a).  ECOM, however, argues that the City threatened
to file eminent domain proceedings and would have commenced proceedings had an
agreement not been reached; thus, the agreement was made under a threat of
eminent domain.[4]
 This argument is inconsistent with our interpretation of Lawson.  See
Porretto, 251 S.W.3d at 712.  ECOM could not assert a claim for
adequate compensation until the City filed a petition to take the property by
eminent domain.  See Singer, 232 S.W.3d at 802 (Cayce, C.J., dissenting).  Thus,
ECOM had no claim to settle at the time the agreement was reached.  Id. 
More importantly, the easement agreement itself contains no language suggesting
an intent to settle an eminent domain claim.  See Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 662 (Tex. 2005) (“In construing a written contract, the
primary concern of the court is to ascertain the true intentions of the parties
as expressed in the instrument.”);
see also Weingarten, 66
F. Supp. 2d at 843 (Deed contained language evidencing an intent to settle and avoid eminent domain proceedings).

ECOM suggests that to hold that the
easement agreement did not settle an eminent domain claim renders the
negotiation process a “mere charade to create immunity.”  To say that the easement
agreement settled an eminent domain claim, when it contains no language to this
effect[5]
and no eminent domain proceeding was pending, further blurs the distinction
between an entity’s power to purchase and its power to take.  See Singer, 232 S.W.3d at 803 (Cayce, C.J., dissenting); see also Travis County v. Pelzel & Assocs., 77 S.W.3d 246, 248 (Tex. 2002) (“[A] governmental entity does not waive
immunity from suit simply by contracting with a private party.”).

Accordingly, we conclude that the City
was “acting within a color of right under contract when it negotiated the
agreement with [ECOM] to purchase [] property and not under its eminent
domain powers.”  Singer, 232 S.W.3d at 803 (Cayce, C.J., dissenting).  Because
the trial court erred by denying the City’s plea to the jurisdiction as to
ECOM’s breach of contract claim, we sustain issue one.

DECLARATORY JUDGMENT

The City argues, in issue two, that the
trial court has no subject matter jurisdiction over ECOM’s declaratory judgment
claim because it is an
improper attempt to enforce performance of the easement agreement and is so
intertwined with ECOM’s breach of contract claim as to be an attempt to recast
its breach of contract claim as a declaratory judgment claim.

A person interested under a deed, will,
written contract, or other writings constituting a contract or whose rights,
status, or other legal relations are affected by a statute, municipal
ordinance, contract, or franchise may have determined any question of
construction or validity arising under the instrument, statute, ordinance,
contract, or franchise and obtain a declaration of rights, status, or other
legal relations thereunder.  Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a) (Vernon 2008).  “[D]eclaratory-judgment suits against state
officials seeking to establish a contract’s validity, to enforce performance
under a contract, or to impose contractual liabilities are suits against the
State” for which immunity is not waived.  Tex.
Natural Res. Conservation Comm’n v. IT-Davy, 74 S.W.3d 849, 855-56 (Tex. 2002).  “[P]rivate parties cannot circumvent
the State’s sovereign immunity from suit by characterizing a suit for money
damages, such as a contract dispute, as a declaratory-judgment claim.”  Id. at 856.

ECOM’s breach of contract claim is
phrased, in pertinent part, as follows:

Through the Ordinance, Midlothian
breached the settlement agreement/contract.  Midlothian’s refusal to allow ECOM
and the future residents of the Master Tract access to Midlothian’s sewer
system without the purchase of water from Midlothian is a breach of the
settlement/agreement contract, which has proximately caused damages to ECOM…

 

ECOM’s declaratory judgment claim states,
in pertinent part:

As the dispute arises from the
interpretation of a written instrument, ECOM requests the Court enter a
declaratory judgment as to the meaning of the easement.  Specifically, ECOM
asks the Court to adjudicate the intent of the parties as reflected in the
easement was to allow future residents of the Master Tract access to
Midlothian’s sewer system without necessity of purchasing water from Midlothian.

 

ECOM requested a similar finding if the
trial court determined that the agreement was ambiguous and, alternatively,
requested rescission in the event there was no meeting of the minds between the
parties.

ECOM maintains that it simply seeks a declaration
as to “whether the easement agreement in conjunction with the ordinance
requires that ECOM purchase water from the City if it likewise wants to connect
to the sewer system.”  We disagree.

In Texas Parks & Wildlife
Department v. Callaway, 971 S.W.2d 145 (Tex. App.—Austin 1998, no pet.), Callaway owned property on which the Texas Parks and Wildlife Department had an easement for a waterway.  See Callaway, 971 S.W.2d at 147.  Callaway sued the Department,
alleging that the Department’s opening of the waterway to the public resulted
in a taking without compensation.  Id. at 148.  Callaway sought a
declaration that the “Department has authority to keep the [waterway]
closed to the public” and “must use this authority in complying with the
easement’s conditions and restrict public boating in the [waterway].”  Id. at 151.  The trial court denied the Department’s plea to the jurisdiction.  See
id. at 147.  The Austin Court held:

Although Callaway’s request for
declaratory judgment is not premised expressly on breach of contract, it is
analogous to such a claim.  In essence, Callaway seeks a declaration of his
rights under the easement and an order enforcing those rights.  There is no
basis for the injunctive relief or the contractual damages that Callaway seeks
unless he can establish that the easement constituted a contract, binding on
the Department, which he can enforce.  Whether the Department’s decision that
it was legally required to open the Pass was correct or incorrect, a suit to
test it by seeking enforcement of contract rights is necessarily a suit against
the state that cannot be maintained without legislative permission.  

 

Id. at 152.

In Lehman Grain, Reed dedicated a sewer line easement to
the City of San Antonio in exchange for the City’s agreement that Reed could
connect to the sewer line as long as “Reed ‘ma[de] a proper application’ and ‘enter[ed]
into an agreement with the City for such sewer service.’”  Lehman Grain, 2007 Tex. App. LEXIS 7515, at
*1-2.  Reed later sued the
City when it denied sewer service.  See id. at *2.  Reed sought a
declaration that “the City is obligated to comply with the terms of the
Dedication Agreement by granting Lehman the privilege of connecting to the
sewer line.”  Id. at
*10.  The trial court
denied the City’s plea to the jurisdiction.  See id. at *3-4.  The San Antonio Court held that Reed’s
declaratory judgment claim sought
to “enforce performance under the easement dedication contract.”  Id. at *10.

In State v. Allodial Limited Partnership,
280 S.W.3d 922 (Tex. App.—Dallas 2009, no pet.), Allodial’s successor sold a twelve acre
tract to the State, but retained a two acre tract, which it later sold to Allodial.
 See Allodial, 280 S.W.3d at 924-25.  Allodial later sued TxDOT.  Id. at 925.  Allodial sought a declaration that the “deed covenants required TxDOT
to take no steps to deprive the 2.843 acre tract of on-grade access to the
service road and that TxDOT's actions constituted a taking under article I, section 17 of the
Texas Constitution.”  Id. at 927.  The
trial court denied TxDOT's plea to the jurisdiction.  See id. at 925.  Citing
Calloway, the Dallas Court held that Allodial’s claim for breach of deed
covenants was “analogous to breach of contract claims.”  Id. at 928.

In light of these authorities, ECOM’s
declaratory judgment claim is analogous to a breach of contract claim.  ECOM
not only seeks a declaration of its rights under the easement agreement, but
further attempts, in essence, to enforce performance of the agreement.  See Callaway, 971 S.W.2d at 152; see also Allodial,
280 S.W.3d at 928; Lehman Grain, 2007 Tex. App. LEXIS 7515, at *10. 
Accordingly, the trial
court erred by denying the City’s plea to the jurisdiction as to ECOM’s
declaratory judgment claim.[6] 
We sustain issue two.

FRAUD/FRAUDULENT INDUCEMENT

            In issue three, the City
contends that the trial court lacks subject matter jurisdiction over ECOM’s
fraud and fraudulent inducement claims.

            In the tort context, “[d]etermining
a municipality’s amenability to suit is a two-step inquiry:” (1) whether the
function is governmental or proprietary; and (2) if governmental, whether immunity has been
waived by statute.  City
of Houston v. Petroleum Traders Corp.,
261 S.W.3d 350, 355 (Tex. App.—Houston [14th Dist.] 2008, no
pet.) (quoting Ethio Express Shuttle Serv., Inc.
v. City of Houston, 164 S.W.3d 751, 754 n.4 (Tex. App.—Houston [14th Dist.] 2005, no pet.)).

ECOM argues that if the City was not
exercising its eminent domain powers at the time of the easement agreement,
then it was acting in a proprietary capacity for which it has no immunity. 
However, the Legislature has identified sanitary and storm sewers and water and
sewer service as governmental functions.  See Tex. Civ. Prac.
& Rem. Code Ann. §
101.0215(a)(9), (32) (Vernon
2005).  By entering a contract for the “purpose of installing, repairing,
maintaining, removing, and operating a sanitary sewer line,” the City performed
a governmental function.  See id.; see also Lehman Grain, 2007 Tex. App. LEXIS 7515, at *8 (“City was acting in a governmental
capacity when it contracted with Reed to acquire the easement for the
installation of the sewer line.”).  

Moreover, ECOM has not alleged (1)
property damage, personal injury, or death proximately caused by the operation
or use of a motor-driven vehicle or motor-driven equipment; (2) personal injury
or death so caused by a condition or use of tangible personal or real property;
or (3) a claim arising from a premises defect.  Tex. Civ. Prac. & Rem. Code
Ann. § 101.021 (Vernon
2005); Tex. Civ. Prac. & Rem. Code
Ann. § 101.022 (Vernon Supp. 2008).  Additionally, the Tort Claims
Act does not apply to
claims “arising out of assault, battery, false imprisonment, or any other
intentional tort.”  Tex. Civ. Prac. & Rem. Code Ann. § 101.057(2) (Vernon 2005); see
Sanders v. City of Grapevine, 218 S.W.3d 772, 779 (Tex. App.—Fort
Worth 2007, pet. denied) (Trial
court lacked jurisdiction over fraud claim because “fraud is an intentional tort.”).

In summary, the trial court erred by
denying the City’s plea to the jurisdiction as to ECOM’s fraud and fraudulent
inducement claims.  We sustain issue three.

EXEMPLARY DAMAGES AND ATTORNEY’S FEES

            In its fourth and fifth
issues, the City argues that the trial court lacks subject matter jurisdiction
over ECOM’s claims for exemplary damages and attorney’s fees.

Because the trial court has no subject
matter jurisdiction to consider ECOM’s breach of contract, declaratory
judgment, fraud, or fraudulent inducement claims, ECOM cannot recover attorney’s
fees or exemplary damages associated with these claims.  See Holland v. Wal-Mart Stores, Inc., 1 S.W.3d 91, 95 (Tex. 1999)
(“[A] prevailing party cannot recover attorney’s fees from an opposing party unless permitted
by statute or
a contract
between the parties.”); see also Twin City Fire Ins. Co. v. Davis, 904 S.W.2d 663, 665 (Tex. 1995) (“[R]ecovery of punitive damages
requires a finding of an independent tort with accompanying actual damages.”).  We sustain issues four and five.

We reverse the trial court’s
judgment and render judgment dismissing
ECOM’s breach of contract, declaratory judgment, fraud, and fraudulent
inducement claims.

 

FELIPE REYNA

Justice




Before Chief
Justice Gray,

Justice
Reyna, and

Justice
Davis

(Chief
Justice Gray dissenting)

Reversed and
rendered 

Opinion
delivered and filed January 27, 2010

[CV06]

 

 









[1]               ECOM also alleged a
takings claim under article I, sections 17 and 19 of the Texas Constitution.  See
Tex. Const. art. I, §§ 17, 19.
 These claims were not part of the City’s partial plea to the jurisdiction and
are not before us.





[2]               We note that Lawson
is a plurality opinion.  A plurality opinion
has little precedential
value, if any.  See Univ. of Tex. Med. Branch v. York, 871 S.W.2d 175, 176 (Tex. 1994).





[3]               ECOM distinguishes Gracia
on grounds that Gracia had an administrative remedy.  See
Donna Indep. Sch. Dist.
v. Gracia, 286 S.W.3d
392, 395 (Tex. App.—Corpus Christi 2008, no pet.) (“The Texas Supreme Court…has forestalled the
waiver-by-conduct exception to sovereign immunity in situations where an
administrative remedy is available.”).  Despite this factual distinction, the
San Antonio Court’s reasoning that Lawson is inapplicable absent a
pending lawsuit is still relevant to our analysis.

 





[4]               Although the record lacks
evidence suggesting that the City actually did threaten to commence eminent
domain proceedings, ECOM’s first amended original petition states:
“representatives of Midlothian indicated to ECOM the city’s need for a sewer
line across a portion of the Master Tract and that it would acquire the land by
eminent domain if an agreement between Midlothian and ECOM could not be
reached.”  We must take ECOM’s pleadings as true.  See Tex. Dep’t of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 228 (Tex. 2004).      
  

 





[5]               ECOM maintains that its
pleadings establish that the easement agreement is actually a settlement of an
eminent domain claim.  While we must take ECOM’s pleadings as true, “we are not
bound by legal conclusions
nor by any illogical factual conclusions drawn from the facts pled.”  Aledo Indep. Sch. Dist. v. Choctaw
Props., 17 S.W.3d
260, 262 (Tex. App.—Waco 2000, no pet.), overruled on other grounds by
Thomas v. Long, 207 S.W.3d 334 (Tex. 2006).

 





[6]               ECOM cites cases in which
a governmental entity was not immune from declaratory judgment actions on
takings claims.  See Koch
v. Tex. Gen. Land Office,
273 S.W.3d 451, 457-60 (Tex. App.—Austin 2008, pet. filed); see also State
v. BP Am. Prod. Co., 290 S.W.3d 345, 365-66 (Tex. App.—Austin 2009,
pet. filed).  The City’s
partial plea to the jurisdiction does not challenge ECOM’s takings claim; thus,
the issue is not before us.